ELY *v.* DETROIT UNITED RAILWAY.

1. APPEAL AND ERROR—SAVING QUESTIONS FOR REVIEW—EXCEPTIONS.

　　Although counsel for plaintiff omitted to except at the time to the court's ruling that he must elect between a count under the death act and a count under the survival act, a subsequent exception to the ruling that the plaintiff could not recover under the survival act should be held to apply where the election was made because of the ruling.

2. PLEADING—ELECTION BETWEEN COUNTS.

　　A ruling that plaintiff must elect under which count he would proceed was erroneous, where the decedent was struck by a falling trolley pole and wheel of the car on which he was riding, and died after being unconscious from five to twenty minutes.

3. DEATH—NEGLIGENCE—SURVIVAL ACT.
   The direct cause of death not operating continuously during the period in which the decedent survived, it was a question for the jury whether his administratrix was entitled to recover under the survival act.

Error to Wayne; Donovan, J. Submitted June 9, 1910. (Docket No. 35.) Decided July 14, 1910.

Case by Bertha Ely, administratrix of the estate of Henry Austin, deceased, against the Detroit United Railway and the Detroit, Monroe & Toledo Short Line Railway for the negligent killing of plaintiff's intestate. A judgment for plaintiff for an insufficient amount is reviewed by her on writ of error. Reversed.

*Clarence P. Milligan*, for appellant.

*Brennan, Donnelly & Van De Mark*, for appellees.

BLAIR, J. The plaintiff's intestate in this case, Henry Austin, met his death as the result of being struck on the head by the trolley wheel and pole of an interurban car of the Detroit, Monroe & Toledo Short Line upon the back platform of which he was riding, and this case was instituted by the plaintiff as administratrix and daughter of the deceased to recover damages for his death. The declaration contained two counts; one setting up liability under the "death act," and the other alleging liability under the "survival act." The length of time which elapsed between the fatal blow and the complete extinction of life is uncertain. According to the highest estimate, about 20 minutes elapsed from the time of the injury until the car reached Rockford. At this place a physician was sent for and procured, which must have consumed some time.

The physician testified:

"The man was on the platform of the car when I got there, and I looked at the man, and he was breathing at that time, and he was alive, and blood was coming out of his mouth and some blew on my vest. The man did not

live longer than a minute after I got there. I raised the man up and tried to see what his pulse was and noticed that it was nearly gone. He had a contusion on the back part of the base of the brain, five inches and a half. * * * Mr. Austin was unconscious during the time I saw him. The breathing was not a normal breathing, still he breathed so that the blood came out of his mouth on my hand."

The lowest estimate of the time between the accident and taking Mr. Austin from the car at Rockford was 5 or 10 minutes. At the close of plaintiff's case the following occurred:

"*Mr. Brennan:* I would like Mr. Milligan to elect at this time which remedy he takes.

"*The Court:* Under the ruling of the cases you should elect which remedy you seek to recover.

"*Mr. Milligan:* Of course to save the record, while your honor is going to rule against the survival act here applicable, I claim under the survival act; but, if not, I will claim under the death act.

"*Mr. Brennan:* He cannot play fast and loose; he has to elect. I think he has to make a positive statement on the record, which remedy he is going to pursue. * * *

"*The Court:* You must make your election now.

"*Mr. Milligan:* The only case—

"*The Court:* Never mind the argument, when I rule I rule.

"*Mr. Milligan:* Well, then, I will rely upon the death act.

"*Mr. Brennan:* I then ask for the direction of a verdict.

"*The Court:* Why?

"*Mr. Brennan:* I would like the jury excused.

"(Jury excused.)

"*The Court:* Was this brought by the estate?

"*Mr. Brennan:* Yes, and my contention is under the showing in this case there is no one legally dependent upon or entitled to support from Henry Austin. The only heirs of Henry Austin were a married daughter and a son, living West, and both of them having attained their majority. Under the case of *Rouse* v. *Railway* [128 Mich. 149], I claim that the presence of a person legally entitled to support is not present in this case.

162 MICH.—19.

"( Argument by Mr. Brennan.)

" *The Court:* I will hear from the other side.

" *Mr. Milligan:* Your honor has ruled I have to elect my count.   Now upon that proposition—

" *The Court:* After I ruled I will not hear it.   I have thought of that ahead, and I have looked it up, and there is no use of taking time upon it.

" *Mr. Milligan:* Then I can have an exception to the refusal to permit me to be heard upon that.

" *The Court:* Well, you have your ruling.   There would not be anything but pain and suffering for 15 minutes, and the fact is that they are not conscious of pain that way.

" *Mr. Milligan:* Your honor, I want an exception to that.

"( At this point Mr. Brennan consented that a verdict be directed against the Detroit, Monroe & Toledo Short Line for the amount of funeral expenses paid by the administratrix.)"

A verdict was directed in accordance with defendants' motion, and plaintiff has brought the record to this court for review upon writ of error.

Among the errors assigned and relied upon for a reversal are the following:

"The court erred in holding that recovery could not be had under the ' survival act,' so called.

"The court erred in holding that plaintiff's intestate did not survive within the meaning of the statutes.

"The court erred in holding that plaintiff must elect under which act he would go to the jury before defendant had sworn a witness or put in its case or any part of its defense.   *   *   *

"The court erred in compelling plaintiff to elect his remedy under the death act.

"The court erred in holding that the death act alone applied to the case."

Counsel for defendant contend that plaintiff unequivocally elected to stand upon the death act, and, if not, there was no error in the rulings of the court, since the survival act does not apply to the facts shown, and there was no liability for damages under the death act.   It is also claimed that no exception was taken to the ruling of

the court compelling an election.   It is apparent from the colloquy between  court and counsel that  counsel only elected to go to  the jury upon the  death act because the court had expressed the opinion that there was no case under the survival act, and we think the exception to the later ruling of the court should be held to apply to the previous ruling upon substantially the same subject.   The ruling of the court requiring plaintiff to elect was erroneous.   *Carbary* v. *Railway,* 157 Mich. 683 (122 N. W. 367).

We are also of the opinion that it cannot be said, as a matter of law, upon this record, that the survival act did not apply.   This case does not fall within the principle of the case of *West* v. *Railway,* 159 Mich. 269 (123 N. W. 1101).   In that case the direct cause of death continued to operate directly upon the injured person until life was extinct.   In the present case the direct cause of death did not operate continuously, but ceased with the first blow, and plaintiff survived the original injury from 10 minutes to perhaps a half hour.   In our opinion, the facts disclosed by this record bring the case within the principle of *Olivier* v. *Railway Co.,* 134 Mich. 367 (96 N. W. 434, 104 Am. St. Rep. 607).

The judgment is reversed, and a new trial granted.

BIRD, C. J., and McALVAY, BROOKE, and STONE, JJ., concurred.