## CAPITAL TRUST COMPANY v. GREAT NORTHERN RAILWAY COMPANY.[1]

October 9, 1914.

Nos. 18,776—(250).

**Witness — conflicting testimony — setting aside verdict.**

1. The testimony of a witness which concededly made defendant's negligence a question for the jury, in this a personal injury action, was not so discredited by prior written statements and reports, or by his cross-examination, that a verdict based thereon, and approved by the trial court, should not stand. The jury have a right to consider the circumstances under which such statements are made.

**Survival of cause of action.**

2. When a person lives an appreciable length of time after receiving an injury through a defendant's negligence, even though in a state of unconsciousness, his cause of action survives under section 9 of the Federal Employer's Liability Act. Testimony that plaintiff's intestate, after the injury, moaned and breathed for ten minutes justified the court in submitting the question of the survival of his cause of action to the jury.

**Damages not excessive.**

3. The damages recovered *held* not excessive since the jury might have found that his death was not instantaneous.

1 Reported in 149 N. W. 14.

---

Note.—Survival of right of action under Federal Employer's Liability Act, see note in 47 L.R.A.(N.S.) 66.

Action in the district court for Ramsey county by the administrator of the estate of William M. Ward, deceased, to recover $35,000 for the death of its intestate. The case was tried before Olin B. Lewis, J., and a jury which returned a verdict for $4,462.50 in favor of plaintiff. From an order denying its motion for judgment in its favor notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*M. L. Countryman* and *A. L. Janes,* for appellant.
*Samuel A. Anderson* and *A. F. Storey,* for respondent.

HOLT, J.

While working for defendant, a carrier of interstate commerce, William M. Ward, a switchman, was killed. The administrator of his estate brought this action under the Federal Employer's Liability Act to recover damages, the claim being that Ward's injuries and death resulted from defendant's negligence. Plaintiff received a verdict, and defendant appeals from the order denying its alternative motion for judgment or a new trial.

Appellant claims that the testimony establishing its negligence is so discredited that a verdict based thereon should not be permitted to stand; that the proof of instantaneous death was conclusive, and hence the court erred in submitting the question of the survival of Ward's cause of action to the jury which, if found true, permitted the damages to be measured by the loss of Ward's earning capacity and not by the pecuniary loss to his beneficiaries; and that the damages are excessive.

The circumstances attending the fatality are in brief these: Ward, an experienced switchman, was engaged, under a foreman, one Rogers, and crew, in distributing a string of 14 cars, in an extensive switchyard in Minneapolis. The cars were to be "kicked" from the lead track and switched onto the proper yard tracks. In the operation the locomotive was in the rear pushing the cars west, and it was necessary to speed up sufficiently so that, when a car from the forward end was uncoupled, the momentum would be sufficient to carry it beyond the intended switch to its destination, the remaining cars would be stopped before reaching the switch, or else the

127 M.—10.

switch would be set against them. If the car, or cars, to be "kicked" were loaded, it was the duty of one of the switchmen to get to the brakes so as to stop at the right place. Rogers was on the ground directing, through signals, the movements of the train and, to some extent, the work of the crew. One man, called the pin puller, uncoupled the car or cars to be "kicked" at the proper time and place, and another attended the switch. As stated the cars were being pushed west in obedience to Rogers' signal to "kick" the forward car, an empty box car. At the time, Ward was observed standing on the running board at the middle of the next box car (one witness states it might have been on the third from the first), looking toward Rogers. A few seconds thereafter he was seen falling over the forward end of the second car, the first car, just prior to that moment having been uncoupled, had moved away several feet from the balance of the cars which were being slowed down, or abruptly checked, as claimed by plaintiff. He was run over and died, if not immediately, within ten minutes.

The negligence claimed was high speed, and the giving of the slow-down signal by Rogers so quickly after the uncoupling that Ward, who understood his duty to be to get onto the uncoupled car and ride it to its destination, did not have time to reach it from where he was standing before the cars parted; also that when Rogers had given the cut-off signal, he signalled the engineer for a quick check of speed, so that the car on which Ward was walking, or standing, was stopped so abruptly and violently as to throw Ward over the end. Counsel for defendant frankly concedes that a case for the jury upon defendant's negligence is made by the testimony of Holden, the switchman who was standing on the ground near Rogers, and who, upon observing the signals and the probability that Ward would not be able to get on the "kicked" car, rushed forward and boarded it in such hurry as almost to trip the pin puller. But it is said, Holden's story is so discredited by his written statements of the occurrence made soon thereafter to defendant and its claim agent, and by his cross-examination, that the verdict should not be permitted to stand. No witness observed Ward the few moments elapsing between the time the car was uncoupled and when he was

seen pitching over the end of the car on which he had been riding. Defendant contends that since the switchman, McDonough, testified that he told Ward that the car then "kicked" was an empty and that the foreman had instructed the crew that empties "kicked" need not be ridden to destination, it is conclusively established that Ward knew or ought to have known that he had no business to try to get on that car. But the acts of the men then present testify to the contrary. Ward evidently considered it his duty to make that car, otherwise he would have remained at the middle and could not possibly have been pitched over the end however sudden the check. When Holden observed the signals of Rogers, he evidently thought it some one's duty to board the car, for he did, and there is no evidence that either Rogers or McDonough then attempted to call him back. Ward is dead and cannot speak. Rogers, the person who gave the signals and saw Ward's position, was not produced as a witness. Defendant sought to account for his absence, but the jury were not bound to find that such diligence in securing his attendance was shown that no inferences favorable to plaintiff's theory of the case should be drawn as to the facts within Rogers' knowledge. As to the claim that the written statements of Holden above referred to, and his cross-examination, wholly discredit his testimony, we observe that the only part in the written statements tending in that direction is to be found in this language "the accident was not due to any rough handling as these cars were switched the same as all others." We think a jury is justified in taking into consideration the circumstances usually surrounding reports and statements of accidents made by an employee to an employer or his claim agent. There may be reasons, that appear good to the servant at the time, why the giving of full details should be unnecessary. Some, because of an aversion to appear as a witness if a suit results, may make as noncommittal report as possible. Others may omit an important detail, thinking its legal bearing trivial. Again, a servant's desire to retain his place may be sufficiently persuasive to him to induce only a partial disclosure of his knowledge, if he thinks himself or a foreman or fellow-servant at all to blame. And, unless compelled by the authority of the law, many persons would hesitate to make

written statements which charge any fellow-being with having been, even remotely, the cause of the death of another. May not also the statement when made in response to a claim agent's questions be somewhat directed, shaded or circumscribed by the questions and the secret purpose of the questioner? We think Holden's veracity was for the jury. There was no inherent improbability in his testimony, nor was it controverted by conceded physical facts.

Ward's injuries were received subsequent to the amendment of 1910 of the Federal Employer's Liability Act, and we do not understand that defendant challenges the correctness of the instructions of the court as to the proper damages in case Ward's cause of action survived. There being no conscious suffering, nor any expenses for medical attendance, the court limited the recovery, in case he was not instantly killed, to the lost earning capacity. There was testimony that Ward, though unconscious, lived some moments after being removed from the train. The court instructed the jury that, if they found that he lived an appreciable length of time after the injury, his cause of action survived. The defendant contends that, since Ward "never regained consciousness and had no conscious period of suffering, there is no reason why the action should * * * survive;" and that "the theory of a survival of an action is that there was a period of time during which the deceased could have brought an action in his own behalf." By that, we assume, it is meant that there should have been a physical possibility to begin an action in his behalf before his death. The authorities cited do not support the contention. In Kearney v. Boston & W. Ry. Co. 9 Cush. (Mass.) 108, a cause of action was held not to survive where "it is in evidence that there was only a momentary, spasmodic struggle, and the death instantaneous." In the later case of Hollenbeck v. Berkshire Ry. Co. 9 Cush. (Mass.) 478, Chief Justice Shaw says: "The accruing of the right of action does not depend upon intelligence, consciousness, or mental capacity of any kind, on the part of the sufferer." Chief Justice Bigelow in Bancroft v. Boston & W. Ry. Co. 11 Allen, 34, says: "The continuance of life after the accident, and not insensibility and want of consciousness, is the test by which to determine whether a cause of action survives." "If the

intestate lived after he was struck, though the time might be brief, the cause of action survived." Tully v. Fitchburg R. Co. 134 Mass. 499. To the same effect is St. Louis, I. M. & S. Ry. Co. v. Dawson, 68 Ark. 1, 56 S. W. 46; Beeler v. Butte & London Copper Development Co. 41 Mont. 465, 110 Pac. 528; Kellow v. Central Iowa Ry. Co. 68 Iowa, 470, 23 N. W. 740, 27 N. W. 466, 56 Am. St. 858; Oliver v. Houghton County St. Ry. Co. 134 Mich. 367, 96 N. W. 434, 101 Am. St. 607, 3 Ann. Cas. 53; Ely v. Detroit United Ry. Co. 162 Mich. 287, 127 N. W. 259. The case of Dillon v. Great Northern Ry. Co. 38 Mont. 485, 100 Pac. 960, is not in point, for there was a stipulation that death was instantaneous. In the case of Kellow v. Central Iowa Ry. Co. supra, the jury answered in the affirmative the question: "Was the death of the deceased of that nature commonly known as instant death?" Nevertheless the court held that such finding did not determine that a cause of action did not accrue to him before his death. The deceased was on a railroad train that was wrecked; when found in the wreck he breathed, but died before he could be removed. The court said: "If he survived the injury but for a single moment, the cause of action accrued to him as certainly as it would have done if he had lived for a month or a year thereafter." One of defendant's witnesses testified that Ward breathed when taken from under the car; Holden's testimony was that, when he reached Ward after returning from riding the "kicked" car into the yard, which consumed about five minutes, he moaned and continued to breathe and live from three to five minutes longer. We think the testimony made the survival of Ward's cause of action a jury question.

If the jury found that Ward lived an appreciable length of time after the injury, and we conclude the evidence so warrants, it cannot be said that the damages are excessive.

Order affirmed.