# Louisville & Nashville R. R. Co. *v.* Fleming.

## *Death Action.*

(Decided April 15, 1915.   Rehearing denied May 20, 1915.
69 South. 125.)

1. *Action; Joinder; Federal Employer's Liability Act.*—In an action under the Federal Employer's Liability Act for the death of a servant, in one count of which damages for the pecuniary loss to the surviving father and mother were sought, while the other sought to recover damages suffered by deceased, two distinct and independent liabilities were sought to be enforced.

2. *Appeal and Error; Review; Objection Below; Necessity.*—Where the defendant in the court below raised no objection to the misjoinder, nor made a motion to require an election, he could not for

[Louisville & Nashville R. R. Co. v. Fleming.]

the first time on appeal raise the question. as to whether the two counts could be joined in the same complaint.

3. *Death; Damages; Evidence.*—Where the action was by the administrator to recover the pecuniary loss to the parents by the death of an employee, under the Federal Employer's Liability Act, evidence of the age, probable duration of life, habits of industry, means, earnings, health, skill, intelligence and character of the deceased, his future expectancies, etc., was admissible as a basis for the admeasurement of the parent's pecuniary loss.

4. *Same.*—In such a case the measure of damages is the present worth of the amount which it was reasonably probable the deceased would have contributed to the support of his parents during the latters' expectancy of life, in proportion to his contribution made while living, not exceeding his expectancy.

5. *Same; Instructions.*—In such a case a charge on the measure of damages, using the word "whole" expectancy of life, referring to the parents, was not improper because the word "whole" was substituted for "latter;" the true rule being otherwise properly stated.

6. *Evidence; Opinion.*—Where the death of the employee was caused by the running at high speed of the locomotive which he was driving against another locomotive which had been left on another track too close to that on which deceased's locomotive was running, the testimony of an employee of the same company who had left such locomotive in such position, giving his opinion as to whether his action was proper under the circumstances, was not admissible, since the conclusion was for the jury to draw.

7. *Appeal and Error; Review; General Objection.*—Where a general objection is sustained to testimony obnoxious to any rules whatever. such action will be sustained on appeal, the court not being required to cast about for specific objections not appearing upon the face of the testimony.

8. *Master and Servant; Negligence; Evidence.*—Where the deceased employee was a locomotive engineer, and was killed at night while running his engine at high speed against the current of traffic, which was contrary to a rule of the company, except under special circumstances, evidence for plaintiff tending to show that such running was a matter of frequent occurrence, was admissible as tending to show negligence on the part of the servant of the railroad who had left another engine on a cross over track so near the track on which deceased's locomotive was running that the latter struck it and caused deceased's death.

9. *Same; Printed Rules.*—Where a rule of the company was sought to be shown in evidence, and such rule was in print, the only way to prove it was by the production of a copy thereof.

10. *Death; Negligence of Servant; Federal Employer's Liability.*— Where a locomotive engineer was killed while operating his engine at a high speed, imprudently or negligently, or even contrary to some rule of the railroad for his guidance, his personal representative was not necessarily barred from recovery against the employing road under the Federal Employer's Liability Act.

[Louisville & Nashville R. R. Co. v. Fleming.]

11. *Same.*—In such a case the fact that deceased was operating his engine in such a manner, did not necessarily take him without the scope of his employment.

12. *Charge of Court; Abstract.*—A charge which has no application to the evidence in the case is properly refused as abstract.

13. *Master and Servant; Injury to Servant; Negligence.*—Where a locomotive engineer ran his engine at high speed knowing that an engine was left on a cross over track nearby, or was likely to be left too near the track where he was running, for safety to him and his train, his act constituted contributory negligence and not an assumption of risk growing out of his contract of employment.

14. *Same.*—The contract of employment of a locomotive engineer did not involve him in any general assumption of risk for the negligence of his co-employees, else the declaration of the Federal Employer's Liability Act that an employee may recover by showing that one of the co-operating causes of his injury was the negligent act or omission of an employee of his employing carrier would be without operation.

15. *Same; Instruction.*—Where a number of the rules of the employing railroad were in evidence, a charge referring to the duties of the deceased as specified in the rules of the master, was properly refused when it did not specify the rules.

16. *Same.*—Where there was evidence tending to show that it was the duty of deceased to test engines nightly before putting them into regular use, by running them back and forth on one of the main lines, and that he was engaged in that business at the time of the accident which resulted in his death, a requested instruction that where the duties of a servant are particularly specified in unambiguous rules of the master, of which he has knowledge, and to which he has assented, his disobedience of them, when they are capable of observance, is negligence—such instruction referring to the rule of the railroad prohibiting the running of trains on a main line against the current of traffic—was properly refused in being defective in ignoring the possibility that the road, by permitting the testing of locomotives as the deceased was doing, had waived his failure to observe the rule.

17. *Same; Question of Fact.*—It was a question of fact for the jury to determine in this case whether the servants of the employing road were negligent in leaving an engine on a cross over track so near the track on which deceased was running that his engine struck it.

18. *Negligence; Contributory; Reduction of Recovery.*—The extent to which the contributory negligence of deceased, if it existed, should reduce the recovery of damages by his administrator was a question of fact for the jury.

APPEAL from Morgan Circuit Court.

Heard before Hon. D. W. SPEAKE.

Action by R. G. Fleming as administrator against the Louisville & Nashville Railroad Company for damages, for the death of his intestate, brought under the

Federal Employers' Liability Act. Judgment for plaintiff and defendant appeals. Affirmed.

The facts and pleadings sufficiently appear. The following charges were refused to defendant:

(16) Even though you are reasonably satisfied from the evidence that it was Fleming's duty to break in or test engines, yet I charge you that the said Fleming could so conduct himself in the performance of said duties as to be outside the scope of his employment, and defendant would not be liable for injuries received by him while so acting outside the scope of his employment.

(21) If, from the evidence, you believe that defendant had in force and effect the following rule at the time intestate was injured: "Within yard limits movements on double tracks against the current of traffic will be made under protection"—and intestate had knowledge of said rule, and was running engine 183 fifty or sixty miles per hour against the current of traffic at the time of the injury, without protection or assurance of protection from an agent of defendant, then I charge you that intestate assumed the risk of any injury he received from such an operation of engine 183.

(33) Where the duties of the servant in certain circumstances are particularly specified in unambiguous and reasonable rules of the master, of which he has knowledge, and to which he has assented, and of which he was aware, if you believe the evidence in this case, his non-observance or disobedience of them at a time when they are capable of observance is negligence on his part, as a matter of law; and if you believe from all the evidence that his non-observance of his duties, as defined by the rules of defendant at the time he

was injured, was the proximate cause of his injury and death, without negligence on defendant's part, your verdict should be for defendant.

(53) If you believe from the evidence that defendant had in force and effect the following rule: "Trains must approach yard limit under control and run carefully through the limits, expecting to find the main track occupied"—and that said rule was known to intestate, and if you further believe from the evidence that intestate was running engine 183 fifty or sixty miles an hour within the yard limits on the main trck, and at the time of the injury, then I charge you that intestate assumed the risk of running said engine at said rate of speed.

Charge 54 bases a verdict for defendant upon the same hypothesis as 53, if said rule was reasonable.

The following is charge B given for plaintiff: Under the evidence in this case, Fleming was acting within the scope of his employment as engneer on engine 183 at the time of the collision.

EYSTER & EYSTER, for appellant.

CALLAHAN & HARRIS, for appellee.

SAYRE, J.—Action by appellee, as administrator, to recover damages for the death of his intestate, Houston Fleming, under the Federal Employers' Liability Act of April 22, 1908, c. 149, 35 Stat. 65, and the amendatory act of April 5, 1910, c. 143, 36 Stat. 291 (U. S. Comp. St. 2913, §§ 8657-8665). Plaintiff's intestate came to his death in July, 1912. The case went to the jury on counts 1, 2, as amended, and A. In each of these counts plaintiff sued for the use of the father and mother of his intestate, who was an unmarried

man. In counts 1 and 2 the damage alleged to have resulted in consequence of the negligence of defendant's agents or employees is comprehended in the simple averment that the death of plaintiff's intestate was thereby caused. In count A the allegation in this respect is that, by reason of the negligence complained of, the locomotive engine upon which plaintiff's intestate was at work was overturned "pinning plaintiff's intestate thereunder, and for several hours thereafter plaintiff's said intestate lay mangled and mashed under said engine, from which he suffered great and excruciating mental and physical pain."

(1, 2) For convenience of statement putting aside count amended 2, as not materially different from count 1, it appears that counts 1 and A state different liabilities under the act of 1908, supra. One seeks to recover the pecuniary loss suffered by the surviving father and mother of deceased by reason of his death; the other seeks to recover the damages suffered by the deceased. These are declared by the Supreme Court of the United States in *Michigan Central v. Vreeland,* 227 U. S. 59, 33 Sup. Ct. 192, 57 L. Ed. 417, 33 Ann. Cas. 1914C, 176, to be two distinct and independent liabilities, and unquestionably they are so. Under the act of 1908 it was settled that the cause of action stated in count A did not survive to personal representatives.—33 Ann. Cas. ubi supra. But section 9 of the amendatory act of 1910 (U. S. Comp. St. 1913, § 8665) provided: "That any right of action given by this act to a person suffering injury shall survive to his * * * personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents, and, if none, then of the next of kin dependent upon such

employee, but in such cases there shall be only one recovery for the same injury."

By virtue of this section plaintiff claimed, in count A, the right to recover damages on account of the mental and physical pain suffered by his intestate. A recovery on that account was allowed in the trial court, and much of appellant's argument is addressed to the proposition that this was error necessitating a reversal. This argument, is based upon 22 assignments of error which relate to rulings on evidence and charges given and refused, whereby the trial court held that under count A plaintiff might recover for the pain and anguish suffered by intestate; and clearly, if that count was properly before the jury, there was no error in these rulings. The real question involved in this connection was whether the two counts could be joined; but defendant made no issue as to that in the court below either by objection to the joinder or by motion to require an election, and the question cannot be raised now for the first time on appeal. Appellant has cited to this point, among other cases, some in which the death of the employee was instantaneous. It may be that in such case the only maintainable suit is on the cause of action given for the benefit of dependents, as alleged in count 1, since, if death is coinstantaneous with injury, there is no appreciable time in which the deceased has a right of action, and there is nothing to survive. Here it is not disputed that deceased survived his injury and suffered for four or five hours.

(3) It was proper for plaintiff to make proof of facts as a basis for the admeasurement of the pecuniary loss alleged to have been suffered by the father and mother of deceased, and claimed in count 1 of the complaint, and, as data for that purpose, evidence of

the age, probable duration of life, habits of industry, means, earnings, health, skill, intelligence, and character of the deceased, his reasonable future expectations, and other like facts, were admissible.—*James v. Richmond & Danville*, 92 Ala. 231, 236, 9 South. 335; *Norfolk & Western v. Holbrook*, 235 U. S. 625, 35 Sup. Ct. 143, 59 L. Ed.——.

(4, 5) At this point we consider two assignments based upon the court's oral charge. After stating the jury's right to look to facts of the sort above stated in determining the amount of compensation, if any, to be awarded to plaintiff for the use of the father and mother as dependents, the court said to the jury: "In connection with the above, it may be-proper to state that a proper measure of damages in this case, under counts 1 and 2, as amended, is the present worth of the amount which it is reasonably probable the deceased would have contributed to the support of his parents during the whole expectancy of life in proportion to the amount he was contributing, if any, at the time of his death, not exceeding his expectancy of life."

But for the substitution of the word "whole" for "latter's," this statement of the law follows literally the text of section 168 of Tiffany's Death by Wrongful Act. The insertion of "whole" is of no logical consequence. Otherwise amended to bring about complete concord with Tiffany's text, the charge has the approval of *McCullough v. Chicago, R. I. & P. R. Co.*, 160 Iowa 524, 142 N. W. 67, 47 L. R. A. (N. S.) 23, and *Richmond v. Railway Co.*, 87 Mich. 374, 49 N. W. 621, and is a correct statement of the measure of damages claimed in counts 1 and 2. But appellant reads the charge as meaning to say that plaintiff was entitled to recover an amount equal to intestate's probable contribu-

[Louisville & Nashville R. R. Co. v. Fleming.]

tion to the support of his parents during the whole
time of his expectancy. We do not think it probable
the instruction was misunderstood by the jury. There
is nothing in the result to so indicate. No separate
response to the different causes of action alleged was
required, and, to the amount proper for compensation
of the parents as dependents under counts 1 and 2, the
jury may have added in their general verdict damages
for the suffering of plaintiff's intestate under count A.
It cannot, on reasonable construction, be said the
charge was positively erroneous. At worst, it was mere-
ly incomplete or obscure, and gave occasion for the ex-
ercise of the right to special instructions under the
statute.

Immediately after the above-quoted instruction the
court added: "And, in determining this, you may take
into consideration the increasing wants of the parents
by reason of advancing age and the increasing ability
of the son to supply those wants, should you find such
to be the case."

To this also there was an exception. It is argued
that there was no evidence to warrant the charge. We
think the evidence, which hardly needs to be stated,
afforded reasonable inference of the postulates of the
charge.

(6, 7) The complaint, and the evidence tending to
support it, charged the death of plaintiff's intestate to
the negligence of one Buckley, an employee of defend-
ant, in leaving an engine so near the track upon which
deceased was driving another engine that a collision
ensued, in which the engine driven by deceased was over-
turned, causing his death. Buckley was a "herder" for
the yard. He took engines from and to the roundhouse
to and from trains. On the occasion in question, short-

ly after midnight, an engine in his charge was standing on a crossover track that connected the two main line tracks. The main line tracks were about eight feet apart. Buckley was called as a witness for plaintiff. On cross-examination the court sustained general objections to the following questions: Was the placing of this engine 1167 on the crossover track a proper and regular movement for it to make? Did you violate any rules or regulations of the company in placing engine 1167 on that track? Was it in conformity with the rules and regulations which prevailed? These questions asked for conclusions it was for the jury to draw from the relevant facts in evidence. The witness might have been permitted, no doubt, to state that it was in general necessary or proper to use the crossover track in the discharge of the duties of his employment, and this is as much as was held in *Helton v. Alabama Midland,* 97 Ala. 281, 12 South. 276. But these question seemed to be framed to draw out the witness' opinion as to the propriety of his action under the circumstances of the particular occasion. That was for the jury, and there was no error in sustaining the general objection. The court is not required to cast about for possible specific objections not lying upon the surface of testimony offered; but a general objection may be properly sustained if the testimony is obnoxious to any rule of evidence whatever.

(8) Plaintiff's intestate had been down the south-bound main line some four or five miles with an engine just out of the repair shop. He was testing the engine. Returning to the shop on the same track, he was running against the current of traffic. This, except under special circumstances, was contrary to a rule of the company. It was competent nevertheless for plaintiff

to show that it was a matter of frequent occurrence—-it appearing to have been a matter of nightly occurrence —as tending to show negligence on the part of Buckley, the herder, or Falkner, the engineer, operating the engine on the crossover, in leaving it so near the southbound track that it would come in collision with an engine being tried out or tested on that track in the customary way. Buckley and Falkner, the engineer who worked with Buckley, and who also was charged with negligence, were employed in the yard, and the jury may have inferred that they were acquainted with the nightly practice. If so, common prudence would have suggested that the practice, whether right or wrong in itself, be considered in the operation of the engine in their charge.

(9) Counsel on both sides state that the exception made the subject of the fifty-seventh assignment of error is not correctly stated in the bill; each stating a different particular in which the exception is not properly set out. In these circumstances, we feel sufficiently informed that there is error in the transcript, but not as to what the error is; and hence that we cannot safely pass upon the assignment. We will say, however, that probably the evidence, touching a rule of defendant company and tending to fasten the charge of contributory negligence upon plaintiff's intestate, was rejected on the ground that the rule was in print, and a copy should have been produced. If so, there was no error.

(10-12) It was a duty of plaintiff's intestate under his employment to break in, try out, or test engines, and that is beyond dispute what he was doing when he was killed. That he may have acted imprudently, or negligently, or contrary even to some rule provid-

ed for his governance, did not necessarily bar a recovery under the federal statute, nor put him without the line and scope of his employment. It is possible, of course, that plaintiff's intestate, in the use of the engine, may have departed entirely from his employment, and in such case defendant would not have been liable to him as an employee, but there was no evidence to sustain such theory in this case. The mere fact that he was operating his engine at a high rate of speed was no evidence that he had wholly quit the purposes of his employer. Charge 16, requested by defendant, was abstract and properly refused. For the same reason the court properly gave charge B requested by plaintiff.

(13, 14) There is no evidence going to show that deceased knew beforehand that the engine on the crossover was or was likely to be too close to the track on which he was operating the engine in his charge, and, if there had been, his act was an act of contributory negligence, not an assumption of risk arising out of his contract of employment. Nor did his contract of employment involve him in any general assumption of risk from the negligence of coemployees, for otherwise the statute counted upon, and declaring, in effect, that the employee may recover upon showing that one of the co-operating causes of his injury was a negligent act or omission of an officer, agent, or other employee of the carrier, would be inoperative.—*Northern Pacific v. Maerkl*, 198 Fed. 1, 117 C. C. A. 237, and authorities cited. Charges 21, 53, and 54, requested by defendant, were for these reasons refused without error.

(15, 16) Charge 33, requested by defendant, refers to duties of plaintiff's intestate "specified in the unambiguous rules of the master." The request, to be of

real service to the jury, should have been more specific. A number of rules were in evidence. We shall assume (for this is one application of the charge to the evidence the jury may have made had it been given) that defendant had here in mind its rule prohibiting the running of trains on main lines against the current of traffiic. In its application to this rule the charge was defective. Plaintiff's intestate may have failed to observe this rule under such circumstances that the court could not declare his nonobservance negligence, as a matter of law. There was evidence going to show that it was proper and necessary to try out, break in, or test engines before putting them into regular use after they had been sent to the shop for repair. If this test was customarily made by running engines back and forth on one of the main lines, and this was a nightly occurence, as the evidence tended to show, the jury may have inferred that defendant was informed of the practice and concurred in it as a reasonable and prudent manner of performing such duties. In that event, the jury may have found that the rule was waived, so that a failure to observe it, without more, did not constitute negligence. The charge in question needed some explanation, and its refusal was not error.

(17, 18)   The question of the negligence vel non of defendant's servants in leaving the engine on the crossover in a place where it imperiled intestate's engine was, we think, clearly one for the jury. The extent to which intestate's contributory negligence, if the jury found him negligent in that way, should reduce the recovery, was also for the jury's determination, under the federal statute.

We have stated our view of all the argued assignments of error, except a very few that have not been consider-

[Birmingham Railway, Light & Power Co. v. Broyles, et al.]

ed to deserve specific treatment, for the reason that the record discloses a patent original lack of merit, or that elsewhere appellant had the full benefit of that for which it contended.

It follows that appellant was not entitled to have its motion for a new trial granted, nor is it due a reversal on this appeal.

Affirmed.

ANDERSON, C. J., and McCLELLAN, and GARDNER, JJ., concur.