**LOUISVILLE & N. R. CO. v. PORTER.**
(8 Div. 203.)

(Supreme Court of Alabama. Oct. 14, 1920. Rehearing Denied Dec. 18, 1920.)

**1. Master and servant ⬤═288(2)—Assumption of risk of collision of cars held for jury.**

In an action for the death of a freight brakeman who was riding on cars making a gravity switch in the dark when he was thrown under the cars by the impact with a car standing, evidence *held* to make the issue of assumption of risk by the brakeman a question for the jury.

**2. Master and servant ⬤═204(3) — Brakeman within federal act does not assume risk of negligence of other brakeman.**

An assistant brakeman riding on the rear of a string of cars does not assume the risk of negligence by the brakeman in control of the movements of the cars while employed in interstate commerce, since to charge him with assumption of such risk would in effect nullify the provision of the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) authorizing recovery on a showing that one of the co-operating causes of the injury was a negligent act or omission of a coemployee.

**3. Master and Servant ⬤═293(3)—Instruction held not to authorize recovery for private act of other brakeman.**

A charge that, if a named individual, as the brakeman of the defendant engaged in inter-

state commerce within federal act, misled plaintiff's intestate as to the position of the cars on the switch, and the defendant thereby was guilty of negligence which was the proximate cause of the injury, they could find for plaintiff, was not erroneous as misleading the jury to believe they could find for plaintiff if the alleged act of the brakeman was in his individual capacity, and not as an employee of defendant.

**4. Death ⊜⟿104(4)—Instructions on damages for suffering held proper.**

In an action for the recovery for the death of a son, instructions authorizing recovery for the physical and mental suffering of plaintiff's intestate, if any, from the time of his injury to his death and for the father's pecuniary loss because of the death do not, when construed with a charge given at defendant's request denying recovery for intestate's suffering while unconscious, authorize recovery for unconscious suffering by intestate or for mental suffering by the father because of his son's death.

**5. Death ⊜⟿82, 85 — Damages recoverable for son's suffering and parent's pecuniary loss.**

In an action for the death of a son, plaintiff may recover both for the pain and suffering of the son while conscious between the time of his injury and of his death and for the pecuniary loss sustained by the father by reason of his son's death, so that it was not error to refuse to require plaintiff to elect to recover under counts claiming one or the other of those damages.

**6. Death ⊜⟿64—Life expectancy, health, habits, and earnings admissible.**

As a basis for the measurement of pecuniary loss suffered by a dependent under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), evidence of the age, probable duration of life, habits, means, earnings, health, skill, and character of deceased, his reasonable future expectations, and other like facts, were admissible.

**7. Death ⊜⟿64—Evidence held admissible to show loss to father.**

In an action on behalf of a father for the death of his son, evidence that the son brought provisions home and gave his father money, and that he rendered services to his father, who was not in good health is admissible as tending to show the pecuniary loss of the father, and not objectionable as evidence of loss of the society and companionship or advice of the son.

**8. Trial ⊜⟿240 — Instruction as to uncertain cause of injury held argumentative.**

A charge that, if the testimony left the matter uncertain and showed that any one of many things might have brought about the injury, for some of which defendant was liable and for some of which it was not, the jury could not guess among the causes and find the negligence to be the real cause, there being no foundation for such conclusion, was properly refused as argumentative.

**9. Death ⊜⟿52 — Averment of conscious suffering sufficient.**

In a count to recover for pain and suffering of deceased between the time of his injury and

death, an averment that deceased suffered excruciating pain is sufficient to allege that he was conscious at the time.

**10. Master and servant ⊜⟿258(14) — Allegations of railroad's negligence as to brakeman on cars held not too general.**

Allegations that the defendant railroad negligently caused the house track on which a gravity switch was made to be obstructed by a standing car without any lights or other signals to warn the injured brakeman of the presence and position of the car was not subject to demurrer on the ground that the allegations of negligence were too general.

Appeal from Circuit Court, Lauderdale County; C. P. Allmon, Judge.

Action by Irvine C. Porter, as administrator of the estate of L. O. Gulley, deceased, against the Louisville & Nashville Railroad Company, for damages for the death of his intestate while employed as brakeman. Judgment for plaintiff, and defendant appeals. Affirmed.

The facts sufficiently appear from the opinion of the court.

Count 8, as amended, is as follows:

Plaintiff, as such administrator, sues the defendant, the Louisville & Nashville Railroad Company, a corporation, to recover the sum of $20,000 as damages for the death of his intestate, L. O. Gulley, on, to wit, January 20, 1916. Plaintiff further avers that his said intestate was an unmarried man and is survived by his father, A. J. Gulley, for whose benefit recovery is sought in this case.

At the time of the injuries from which he died plaintiff's intestate was employed by the defendant in the capacity of a brakeman and was engaged in his duties as such on a freight train belonging to the defendant and which was carrying freight between the states of Tennessee and Alabama.

Plaintiff avers that his intestate was engaged in his duties as brakeman on a string of cars which were being placed on one of the defendant's tracks, known as the house track, alongside its freight depot at Florence, Ala., when and where he was suddenly jerked, jarred, or thrown from off said cars down to and on the said track, and was so broken, crushed, and mangled by one or more of said cars passing over him that he soon thereafter died. And plaintiff avers that the defendant negligently caused or allowed the said house track to be obstructed by a standing car without any lights, watch, or other signal to notify or warn his intestate of the presence and position of said car, and as a proximate consequence of such negligence the cars upon which plaintiff's intestate was riding collided with said car, and plaintiff's intestate was by said collision so as aforesaid thrown under said cars and killed; that in the death of plaintiff's intestate the said A. J. Gulley, for whose benefit this suit is brought suffered great pecuniary loss and damage, in this, to wit, that said deceased regularly contributed to his needs, aid and support by money contributions and otherwise, and that he

had a reasonable expectancy for the continuance of said aid and support in the future and even to a greater extent as his needs demanded and his said son's ability increased, all of which he has lost and been deprived of by his said son's death.

Count 10:

Plaintiff, as such administrator, sues the defendant, the Louisville & Nashville Railroad Company, a corporation, to recover the sum of $20,000 as damages for injuries sustained by his said intestate, L. O. Gulley, on January 20, 1916. At the time of the injuries complained of plaintiff's intestate was employed by the defendant in the capacity of a brakeman and was engaged in his duties as such on a train belonging to the defendant and which was carrying freight between the states of Tennessee and Alabama and the defendant was a railway corporation engaged, among other things, as a common carrier of freight between the states of Tennessee and Alabama.

Plaintiff avers that his said intestate was engaged in his duties as brakeman on a string of cars which were being placed on one of defendant's tracks, known as a house track, alongside its freight depot at Florence, Ala., when and where he was suddenly jerked, jarred, or thrown from off said cars down to and on said track and was so broken, crushed, and mangled by one or more of said cars passing over him that for a long space of time, to wit, four hours, he suffered great and excruciating physical and mental pain. And plaintiff avers that the defendant negligently caused or allowed the said house track to be obstructed by a standing car without any lights, watch or other signal to notify or warn his intestate of the presence and position of said car, and as a proximate consequence of such negligence the cars upon which plaintiff's intestate was riding collided with said car, and plaintiff's intestate was by said collision so as aforesaid, thrown under said cars and killed.

The following charges were refused to defendant:

(36) The presence of the intestate on the top of a car in the cut of cars knowing that it would come in contact with a stationary car was a risk assumed by him incident to the service in which he was engaged.

(G) Even though you are reasonably satisfied from the evidence that defendant was guilty of the negligence alleged in the various counts of the complaint, yet I charge you that the plaintiff is not entitled to recover both damages for the mental and physical suffering of the intestate and damages which are pecuniary loss to intestate's father.

(29) If the testimony in this case leaves the matter uncertain and shows that any one of many things may have brought about the injury for some of which the defendant is liable and for some of which it is not, it is not for the jury to guess among these many causes and find that the negligence of the defendant was the real cause of the intestate's injury, there being no foundation in the testimony for that conclusion.

The court's oral charge designated as A is as follows:

Or, if the defendant, through its brakeman Hollis, was guilty of negligence, which negligence was the proximate cause of plaintiff's intestate's death, and you are reasonably satisfied from the evidence in this case of this, it is your duty to find for the plaintiff, or if McCandless, the brakeman of the defendant, misled plaintiff's intestate by his statement as to where the car was on the house track, and the defendant thereby was guilty of negligence, which negligence was the proximate cause of injury to plaintiff's intestate, and you are reasonably satisfied of this from the evidence in the case, it would be your duty to find for the plaintiff, but in either event it would be your duty to find for the defendant if you were reasonably satisfied from the evidence that plaintiff's intestate assumed the risk incident to his injury.

The following are assignments of error referred to:

(47) Overruling defendant's objection to questions to the witness Gulley as follows: "In what way did he assist you there at home with your own business or expenses?"

(48) Overruling motion to exclude the answer: "He bought stuff and brought it home and gave me a little money along."

(49) Overruling objection of the defendant to question to the same witness: "If you know any incident in which he specially aided you on account of your sickness, state it; that is, within a year or two before his death."

(50) Overruling motion to exclude the answer: "Well, he worked for me and aided me in the stuff he would buy to assist me."

(51) Overruling objection of the defendant to the question to the same witness: "Were you ever sick at any time, and if he rendered you special service, state to the jury what those services were."

(52) Overruling motion of defendant to exclude the answer: "I was sick and he came home and kept up my job until I was able to work."

(53) Overruling objection of the defendant to the question to the same witness: "What was the condition of your health about the time he died?"

(54) Overruling motion to exclude the answer: "My health wasn't very good about that time."

Eyster & Eyster, of Albany, and Andrews & Peach, of Sheffield, for appellant.

The evidence does not establish a case of intestate's injury as a proximate result of negligence alleged in the various counts or any of them. Witnesses other than those testifying on the former case testified in this, and hence 201 Ala. 469, 78 South. 375, is not conclusive of this contention. 164 Ala. 110, 51 South. 147; 166 Ala. 544, 51 South. 996; 164 Ala. 92, 51 South. 385; 161 Ala. 413, 49 South. 860; 129 Fed. 531, 65 C. C. A. 226, 70 L. R. A. 264; 129 Ala. 561, 30 South. 571; 120 Ala. 543, 24 South. 955; 97 Ala. 168, 11 South. 886; 139 La. 1104, 72 South. 752; 179

U. S. 659, 21 Sup. Ct. 275, 45 L. Ed. 361. The judge should not have submitted the case to the jury on this theory. 173 Ala. 644, 51 South. 821. Under all the evidence the intestate was guilty of assumption of risk. 245 U. S. 441, 38 Sup. Ct. 139, 62 L. Ed. 385; 74 W. Va. 666, 83 S. E. 54, L. R. A. 1915C, 432; 164 Ala. 49, 51 South. 169; 241 U. S. 229, 36 Sup. Ct. 588, 60 L. Ed. 970; 241 U. S. 237, 36 Sup. Ct. 592, 60 L. Ed. 977; 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475. Court should have given charge G. 194 Ala. 51, 69 South. 127. Also charge 29. 173 Ala. 641, 55 South. 821; 181 Fed. 95, 104 C. C. A. 151, L. R. A. 1917E, 1. Counsel discuss other assignments of error, but without further citation of authority.

Callahan & Harris, of Decatur, for appellee.

Most of the assignments argued have been settled contrary to appellant's contention on a former appeal in this case. 201 Ala. 469, 78 South. 375. As to the duty of the head brakeman on a descending car in such cases, see 117 Ala. 231, 23 South. 797. There was no such assumption of risk as is attempted to be asserted by the appellant. 201 Ala. 469, 78 South. 375; 199 Ala. 377, 74 South. 581; 241 U. S. 462, 36 Sup. Ct. 620; 241 U. S. 210, 36 Sup. Ct. 599, 60 L. Ed. 956. There was no error in the court's oral charge. 194 Ala. 51, 69 South. 128; 241 U. S. 485, 36 Sup. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367. Counsel discuss other assignments of error, but without further citation of authority.

THOMAS, J. The suit by a father for the death of a son was under the federal Employers' Liability Act (8 U. S. Comp. St. 1916, §§ 8657–8665).

The former appeal (Porter v. L. & N.) is reported in 201 Ala. 469, 78 South. 375. The several questions for the jury were declared to be: (1) Whether plaintiff's deceased son (L. O. Gulley), a brakeman, falling under the wheels of cars making a gravity switch in the dark, fell off a car or was thrown off a car by a sudden impact with a stationary car; (2) whether Hollis, the brakeman riding on the leading car of the string (on which Gulley was also a brakeman) making a gravity switch in the dark, was negligent in allowing a collision with a stationary car, or was negligent in failing to retard the speed of the string of cars, thereby diminishing the force of the impact with the stationary car; (3) whether the head brakeman (McCandless) in charge of the gravity switch of a string of cars on which Gulley was riding in the dark was negligent in telling the operating brakeman that there was a stationary car near the platform, when in fact that car was much nearer the string making the gravity switch, whereby the collision occurred at a time and under circumstances that the operating brakemen riding thereon (Hollis and Gulley) were not expecting it, and therefore not prepared therefor. The evidence in the present record justifies each of these rulings and it would subserve no good purpose to repeat the same. There was no error in refusing defendant's motion for new trial based on insufficiency of the evidence to warrant submission to the jury and to support the verdict.

[1] On former appeal a charge that sought to instruct the jury that plaintiff's intestate assumed all the ordinary risk incident to the manner in which his fellow servants discharged their duties in the operation of making the gravity switch, "which would comprehend a risk of a negligent discharge of duty by a fellow servant," was held properly refused under that evidence. We are of opinion that, under defendant's pleading and evidence, or the reasonable inferences therefrom, a jury question was presented on the second trial. Amerson v. Corona C. & I. Co., 194 Ala. 175, 69 South. 601; Tobler v. Pioneer M. & M. Co., 166 Ala. 482, 517, 52 South. 86. As a witness, the brakeman (Hollis) riding on the leading car said:

"I had been running on this train about six years. I had never made the run with L. O. Gulley. He was not exactly a regular brakeman. I had been running regularly. * * * After the engine and nine cars had been cut off and put in on the scale track, * * * that left Mr. Gulley and me in charge of the seven cars. The seven cars were to be placed on the house track. That is the track that runs by the depot and the platform. I was stationed on the head end of the seven cars, and Mr. Gulley was near the rear end. The track was descending, and the cars would just roll down. As the cars were rolling in from the main line on to the house track, McCandless said to Gulley and me there were some cars down by the platform somewhere. * * * I was on the front end of the cars. The string of seven cars stopped before it got in on the house track. At that time I was on the first or second car. I handled the brakes on the first and second cars. Gulley was on the fifth car from the head end. The brake on that car was on the north end—that is, the rear end. When the cut of cars stopped I released my brake. McCandless assisted Mr. Gulley to release his brake. The cars then started on. * * * They did not get any speed. We kept them under control. Of course, they got a little faster, but didn't run over two miles an hour. They ran six or eight car lengths, and coupled into another car. I did not see the other car before we hit it. I was the front brakeman. I was setting the brake. I don't know which way I was looking when it hit. * * * Just before that I couldn't say where I was looking. When the cut of cars coupled into the other car, it made a little jar; it wasn't an unusual jar in coupling."

And witness Olive testified that—

"The platform is on the north end of the depot, and it is a good big platform. * * *

They would often switch cars on those tracks. They would want to run some cars on one track and some on another, and it is all down grade, and they would throw the switch and they would roll in there themselves down grade. * * * Cars are not stationed around on that track all the time along there. Cars would generally be down about the depot on the house track. It was customary to leave cars on that house track north of the depot so they could move them down by the depot and others would be moved off from the depot by force of gravity. I saw this every day."

[2] Neither witness said it was customary to leave cars 330 to 360 feet or more north of the corner of the "big platform" located "on the north end of the depot." When this evidence is so considered, the question of assumption of risk becomes one for the jury. The contract of his employment under which Mr. Gulley labored as an assistant or subbrakeman (under McCandless or Hollis, either or both) did not involve him in any general assumption of risk from the negligence of such coemployees. If otherwise, the statute (federal Employers' Liability Act) declaring, in effect, that the employee may recover upon showing that one of the co-operating causes of his injury was a negligent act or omission of a coemployee, would be inoperative. Nor. Pac. v. Maerkl, 198 Fed. 1, 117 C. C. A. 237; L. & N. v. Fleming, 194 Ala. 51, 62, 69 South. 125; Sou. Ry. v. Fisher, 199 Ala. 377, 380, 74 South. 580; Sou. Ry. v. Peters, 194 Ala. 94, 69 South. 611; Porter v. L. & N., supra; L. & N. v. Wright, 202 Ala. 255, 80 South. 93. The distinction between assumption of risk and contributory negligence is made in Seaboard Air Line v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 912, L. R. A. 1918E, 882, Ann. Cas. 1914C, 1282; Yazoo & M. V. v. Wright, 235 U. S. 376, 35 Sup. Ct. 130, 59 L. Ed. 277.

The foregoing doctrine of assumption of risk is sustained by the Supreme Court of the United States in Chesapeake & Ohio v. De Atley, 241 U. S. 310, 316, 36 Sup. Ct. 564, 566 (60 L. Ed. 1016), where Mr. Justice Pitney observed of "an instruction upon the question of assumption of risk, dealing solely with the ordinary hazards of the employment, and not pointing out that a different rule must be applied with respect to an extraordinary risk attributable to the engineer's negligence," that it would probably have confused and misled the jury. Again in Chesapeake & Ohio v. Proffitt, 241 U. S. 462, 468, 469, 36 Sup. Ct. 620, 622 (60 L. Ed. 1102), it was said:

"Negligence in the doing of the work was the gravamen of plaintiff's complaint, in his declaration as in his evidence, and defendant was not entitled to an instruction making the pursuit of a customary system decisive of the issue, without regard to whether due care was exercised in doing the work itself. Even if plaintiff knew and assumed the risks of an inherently dangerous method of doing the work, he did not assume the increased risk attributable, not to the method, but to negligence in pursuing it."

That is to say, the employee "assumes the risk normally incident" to his employment, not such a risk as may arise from the failure of some other employee to use due care so as to enable his coemployee to discharge the duties of his employment without undue peril. Charges requested by defendant on a contrary assumption were properly refused, for example, charge No. 36.

[3] The first exception to the oral charge, which we denominate A, was in accord with the foregoing authorities. It is a strained construction to say that, when referred to the whole evidence, the jury was not instructed and did not understand that McCandless, as the brakeman of the defendant acting within the line of his employment, and not as an individual acting outside of his employment, misled plaintiff as to the location of the car with which the string of cars collided, and that the defendant was thereby guilty of the negligence proximately causing the injury to plaintiff's intestate. The instruction of the court only said to the jury that, if the defendant acted through McCandless, its brakeman, and he negligently gave the misleading information to the brakeman in charge of the string of moving cars as to the location of the standing car and the proximate cause of the injury declared upon, there was no error committed in this instruction to the jury.

[4] Appropriate assignments of error are based on the two statements of the court in the oral charge to which exceptions were reserved, as follows:

"One of the items of plaintiff's damages is compensation for physical suffering and pain and mental suffering and pain, if plaintiff's intestate did suffer that way, from the time of his injury to the time of his death. * * * In addition to compensation for physical pain and suffering and mental suffering, if you find that he suffered that way, you should compensate plaintiff for his pecuniary loss, if he suffered any pecuniary loss. Now, the true test of the measure of damages is if the jury find for the plaintiff and find that his intestate, L. O. Gulley, suffered conscious injury for an appreciable period of time, then the measure of damages which you should award by your verdict would be such a sum as would be full compensation for the mental and physical pain suffered by the deceased, L. O. Gulley, while he lived."

In this connection should be noted the whole of the oral charge, and at defendant's request the jury was instructed:

"If you believe that L. O. Gulley was unconscious from the time of the accident to the time of his death and believe that from the evidence, then you cannot award any damages on account of the physical pain and mental suffering of L. O. Gulley from the time of his injury to the time of his death."

And the charge given at plaintiff's request:

"If the jury find for the plaintiff and find that his intestate, L. O. Gulley, suffered conscious injury for an appreciable period of time, then the measure of damages which you should award by your verdict would be such a sum as would be full compensation for the mental and physical pain suffered by the deceased, L. O. Gulley, while he lived; and to this sum should be added the present worth of the amount which it is reasonably probable the deceased would have contributed to the support of his father during the latter's expectancy of life in proportion to the amount he was contributing, if any, at the time of his death, not exceeding his expectancy of life, and, in determining this, you may take into consideration the increasing wants of the father by reason of advancing age and the increasing ability of the son to supply those wants, should you find such to be the case; provided that, if you find from the evidence that the deceased was also negligent, and that such negligence proximately contributed to his death, then the plaintiff would not be entitled to full damages, but a diminished sum, bearing the same relation to the full damages that the negligence attributable to the defendant bears to the negligence attributable to both."

When the several instructions of the court are considered together or as relating to the subject of recoverable damages, it was, in effect, that recovery for pain and anguish suffered by the decedent be confined to his conscious pain and suffering and may not be awarded on account of physical pain and mental suffering for any appreciable time during which he was unconscious, between his injury and death (L. & N. v. Fleming, supra; St. L., I. M. & S. v. Craft, 237 U. S. 648, 35 Sup. Ct. 704, 59 L. Ed. 1160; Great Northern Ry. v. Capital Trust Co., 242 U. S. 144, 37 Sup. Ct. 41, 61 L. Ed. 208, L. R. A. 1917E, 1050; Seaboard Air Line v. Tilghman, 237 U. S. 499, 35 Sup. Ct. 653, 59 L. Ed. 1069; K. C. So. v. Leslie, 238 U. S. 599, 35 Sup. Ct. 844, 59 L. Ed. 1478; Northern Pac. v. Maerkl, supra; Capital Trust Co. v. Great Northern [1914] 127 Minn. 144, 149 N. W. 14; Moffett v. Balt. & Ohio, 220 Fed. 39, 135 C. C. A. 607), and may not include pain and suffering contemporaneous with death or a mere incident thereto (Great Northern v. Capital Trust Co., supra; St. L., I. M. & So. v. Craft, supra). There was no error in charging the jury as indicated. The written instruction (charge 44) given at defendant's request removed all doubt that the oral charge may have misled the jury into awarding damages for plaintiff's intestate's pain and mental suffering while unconscious, and that no damages for the "pain and suffering" plaintiff may have experienced by reason of the injury and death of his son were recoverable. The instruction of the court as to damages was not infected with reversible error. Chesapeake & Ohio v. Kelly, 241 U. S. 485, 36 Sup. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367.

[5] There was no reversible error in refusing to require plaintiff to elect to recover under the counts claiming damages for the pecuniary loss suffered by intestate's father by reason of the aid and support by moneyed contributions, etc., made by the son, or under the counts claiming damages for the conscious physical and mental suffering of intestate, the proximate result of his injury. L. & N. v. Fleming, supra; L. & N. v. Wright, 202 Ala. 255, 80 South. 93; Great Northern v. Capital Trust Co., supra; St. L., I. M. & S. v. Craft, supra; Capital Trust Co. v. Great Northern, supra; Louisville & Nashville Ry. Co. v. McElwain, 98 Ky. 700, 34 S. W. 236, 34 L. R. A. 788, 56 Am. St. Rep. 385; Brown v. Chicago & N. W. Ry. Co., 102 Wis. 137, 77 N. W. 748, 78 N. W. 771, 44 L. R. A. 579; Davis v. St. Louis Iron Mountain & Southern Ry. Co., 53 Ark. 117, 13 S. W. 801, 7 L. R. A. 283; Stewart v. United Electric Light & Power Co., 104 Md. 332, 65 Atl. 49, 8 L. R. A. (N. S.) 384, 118 Am. St. Rep. 410; Mahoning Valley Ry. Co. v. Van Alstine, 77 Ohio St. 395, 83 N. E. 601, 14 L. R. A. (N. S.) 893. On like authority the court committed no reversible error in refusing to give defendant's requested written charge, denominated G.

[6] As a basis for the admeasurement of pecuniary loss suffered by a dependent (under the federal Employers' Liability Act), or as data for such purpose, evidence of the age, probable duration of life, habits of industry, means, earnings, health, skill, intelligence, and character of deceased, his reasonable future expectations, and other like facts, were admissible. L. & N. v. Fleming, supra; Norfolk & Western v. Holbrook, 235 U. S. 625, 35 Sup. Ct. 143, 59 L. Ed. 392. That is, it was competent to show such facts tending to aid the jury in the ascertainment of an element of damages claimed by a parent—the present worth of the amount which it is reasonably probable the deceased would have contributed to the support of the parent during the latter's expectancy in life, in proportion to the amount he was contributing, if any, at the time of death, not exceeding his expectancy of life. Roberts' Inj. Intes. Emp. p. 150, § 75; Tiffany's Death by Wrongful Act, § 168, p. 209; American R. Co. v. Birch, 224 U. S. 547, 32 Sup. Ct. 603, 56 L. Ed. 879; McCoullough v. C., R. I. & P., 160 Iowa, 524, 142 N. W. 67; Thornton v. Seaboard Air Line, 98 S. C. 348, 82 S. E. 433.

[7] There was no error in overruling defendant's objections to plaintiff's evidence covered by assignments of error 47 to 54, inclusive. The several questions and answers did not elicit information of an inestimable loss to the parent of the society and companionship or advice of the deceased son, but were of facts tending to show a material loss which can be measured by the required standard for the ascertainment of pecuniary valuation by the jury. Michigan Central v. Vreeland, 227 U. S. 59, 71, 33 Sup. Ct. 192, 57 L. Ed. 417, Ann. Cas. 1914C, 176; Patterson Ry. Acc. Law, §§ 401, 402; Roberts' Inj. Intes. Emp. p. 152, § 78 et seq.; American R. Co. v.

Didricksen, 227 U. S. 145, 33 Sup. Ct. 224, 57 L. Ed. 456; Dooley v. Seaboard Air Line, 163 N. C. 454, 79 S. E. 970, L. R. A. 1916E, 185. For Lord Campbell's Act see Death by Wrongful Act, Tiffany, appendix, p. 281; analysis, p. xviii; 9 & 10 Vict. c. 93, entitled "An act for compensating the families of persons killed by accidents"; 27 & 28 Vict. c. 95.

[8] The refusal of defendant's charge 29 may be justified as being argumentative, if not otherwise faulty.

[9] Assignments of error are addressed to the overruling of demurrer to counts 9 and 10 as last amended. Appellant urges that said counts should have averred that intestate's suffering after his injury was "conscious" suffering. It would be an innovation in the law of pleading to hold that a claim for damages sought for physical and mental suffering must be accompanied by an averment that the party so suffering was conscious of it. We are furnished with no authority to this effect, nor do we believe that good pleading requires such specific averment. Said counts aver that plaintiff's intestate suffered great and excruciating physical and mental pain. No other averments could have been made which would so nearly describe the conscious pain and suffering of plaintiff's intestate than that it was excruciating.

[10] The grounds of demurrer addressed to the question of generality in averment of the negligent act of defendant causing the injury are not well taken. The reporter of decisions will set out count 8 as amended. Count 10 was not subject to demurrer directed thereto. The ground of demurrer addressed to the complaint that it contained a misjoinder of action in claiming pecuniary damages resulting to plaintiff and physical pain in some of the counts and anguish endured by the intestate while conscious and in life in others has been treated above. We have answered the insistence for error on this account against the appellant on the authority of recent decisions by this court and the Supreme Court of the United States.

There being no reversible error, the judgment of the trial court is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.