(75 South. 473)

BENTON v. CITY OF MONTGOMERY et al. (3 Div. 173.)

(Supreme Court of Alabama. Feb. 8, 1917. Rehearing Denied May 24, 1917.)

1. MUNICIPAL CORPORATIONS ⟨Key⟩814 — DEFECTIVE STREETS—LIABILITY.

Where a city was sued for personal injuries received by falling into an open subway on theory that a street railway company had removed a protecting wall and city had allowed such condition to continue, the company was properly made a party defendant under Code, 1907, §§ 1273, 1274, providing that parties creating the condition for which the municipality is liable for failure to remedy should be made parties defendant.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1709, 1710.]

2. MUNICIPAL CORPORATIONS ⟨Key⟩812(7)—PERSONAL INJURY CLAIM—NOTICE.

Code 1907, § 1275, providing that notices of personal injury claims against municipalities must state substantially the manner in which injury was received and day and time it occurred, etc., is not complied with where an injury occurred the day previous to date specified in the notice.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1702.]

3. STREET RAILROADS ⟨Key⟩83—TRESPASSER ON TRACKS—LIABILITY.

A person crossing a street upon street railroad tracks elevated upon a trestle is a trespasser, and cannot recover for personal injuries in absence of evidence that the company knew of his perilous position.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 179, 180.]

4. STREET RAILROADS ⟨Key⟩110(2)—PLEADING—CONTRIBUTORY NEGLIGENCE.

In a personal injury action against a street railroad, defendant's plea that the unsafe condition of a path taken by plaintiff's decedent to cross a street was visible to all persons at any time is sufficient, since it includes the allegation that the danger was apparent if decedent exercised ordinary care.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 224.]

5. STREET RAILROADS ⟨Key⟩98(5)—PEDESTRIAN CROSSING TRACK—CARE REQUIRED.

While a pedestrian may cross a street along which runs an elevated street railway, yet he must exercise a higher degree of care because of the changed situation due to the street railway's presence.

6. STREET RAILROADS ⟨Key⟩118(11)—TRIAL ⟨Key⟩252(9)—INJURY TO PERSON NEAR TRACK — INSTRUCTIONS.

A requested instruction that a pedestrian may cross a street along which runs an elevated street railway track was properly refused as abstract where there was no evidence that plaintiff's decedent was crossing, instead of walking along, the tracks, and as misleading because not stating the added care demanded by the presence of the elevated tracks.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 268; Trial, Cent. Dig. § 603.]

7. STREET RAILROADS ⟨Key⟩118(1)—INJURY TO PERSON NEAR TRACK—INSTRUCTIONS.

In a personal injury action against a city and street railway company, refusing plaintiff's requested instructions which did not discriminate between defendants' liability is not erroneous, where the city was not liable, because a proper claim had not been presented to it.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 258, 259.]

---

**8. STREET RAILROADS ☞118(11)—INJURY TO PERSON NEAR TRACK—INSTRUCTIONS.**

An instruction that plaintiff could not recover if his intestate was killed while walking along or crossing defendant street railroad's trestle *held* not erroneous, although it might well have been refused as incomplete.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 268.]

**9. STREET RAILROADS ☞118(11)—INJURIES TO PERSON NEAR TRACK—INSTRUCTION.**

In a personal injury action against a street railroad company based upon a defective street condition, an instruction that, if plaintiff's intestate had reason to believe the dangerous place existed, it was his duty to watch, detect, and avoid it, *held* reversible error, since he was not guilty of contributory negligence unless he should have known the danger existed, and the charge may require too high a degree of care.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 268.]

**10. STREET RAILROADS ☞118(11)—INJURY TO PERSON NEAR TRACK—INSTRUCTIONS.**

In action against a street railroad, an instruction preventing recovery if plaintiff's intestate selected a known dangerous way to cross a street when there was a safe way apparent to him is not erroneous if word "apparent" be taken to mean "obvious."

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 268.]

Appeal from Circuit Court, Montgomery County; W. W. Pearson, Judge.

Action by Cornelia C. Benton, as administratrix, against the City of Montgomery and the Montgomery Light & Traction Company. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

The following is count B of the complaint: "Plaintiff claims of defendant * * * for that said city of Montgomery is a municipal corporation and was on and for many years prior to December 17, 1912, a municipal corporation organized under the laws of the state of Alabama, and that, to wit, on said day and date, there existed in the city of Montgomery, and within its corporate limits, a public street or highway known as Commerce street; that said street had existed for many years prior to said day and date, and that there was on said day and date, and had been for many years prior thereto, near the north end of said street, the entrance to a subway or underpass leading along the middle of said street in a northerly direction, said entrance being much narrower than the said street of defendant, and being near the center in width of said street; that along the east side of said entrance, and within, to wit, 5 feet of the edge of said entrance, was, and had been for, to wit, five years before said day of December 17, 1912, in said street, a street railway track elevated above the grade of said street about 20 inches; that said street railway track paralleled the said entrance or underpass on the east side thereof from where the same begins, for a distance of about 400 feet, and then curved to the west and crossed the north end of said entrance; that said entrance or underpass is paved with stone for a distance of about 22 feet south of the point where said track crosses the east side of said entrance, and the pavement of said entrance is about 12 feet below the grade of said street, and said side of said entrance is perpendicular; that it became and was the duty of said city of Montgomery to maintain a wall of sufficient height along the east side of said entrance where said entrance was of the depth aforesaid, or some device calculated and suitable to prevent pedestrians who might attempt to cross said street at said point from falling into said chasm, or to put them on notice of the danger to be incurred in crossing said street at said point. But plaintiff alleges that on said day and date above mentioned, and for several years, about five years, prior thereto, said city of Montgomery did negligently permit the east side of said entrance to be and remain in such condition as that for a distance of about 20 feet south of where said railway track crosses said east side of said entrance or subway there was no wall along said east side of said subway, nor was there any other device maintained calculated to prevent pedestrians who might attempt to cross said street at said point from falling into the chasm made by the said entrance, or to put them on notice of the danger to be incurred in attempting to cross said street at said point; that as a result of such negligence plaintiff's intestate, Robert W. Benton, did on, to wit, said December 17, 1912, at or about 7 o'clock p. m., while attempting to cross said street at said point fall into said entrance, and sustain injuries from which he shortly afterwards died, which said injuries were proximately caused by the negligence of defendant as aforesaid. Plaintiff alleges that prior to the institution of this suit, and within six months of the time of said injuries received by plaintiff's intestate, plaintiff filed with the clerk of defendant city of Montgomery a sworn statement setting out substantially the manner in which said injuries were received, and the date, time, and place where said intestate was injured, and the amount of damages claimed. As showing the liability of defendant Montgomery Light & Traction, a corporation, for said injuries, plaintiff alleges that the city of Montgomery was made liable for the action for damages here claimed by reason of the unauthorized or wrongful acts, or negligence, carelessness, or unskillfulness, of said Montgomery Light & Traction Company in this, for that defendant city of Montgomery constructed or caused to be constructed years ago, to wit, ten years, along the entire east side of said entrance to said underpass, a wall of sufficient height and strength to prevent pedestrians exercising ordinary care and diligence from falling into said entrance in attempting to cross said street; that the predecessors of defendant the Montgomery Light & Traction Company, to wit, the Montgomery Street Railway Company, tore down that part of the wall on the east edge of said entrance to said subway where it is alleged there was no wall at the time of the injury, to wit, six years before the time of said injury, for the purpose of operating a street railway whose track was then being built along near the said part of said wall, to wit, about 3 feet from said wall, and permitted same to remain in the condition alleged until said railway was succeeded by defendant Montgomery Light & Traction Company, who operated cars along said track, and permitted same to remain in such condition up to the time of the injuries complained of; that said Montgomery Street Railway Company, and after them said Montgomery Light & Traction Company so occupied said east edge or bank of said entrance from the time of tearing down said wall until the time of the alleged injuries; that it became the duty of defendant Montgomery Light & Traction Company, so occupying said edge of said subway, to erect some barrier or maintain some other device at said place calculated to prevent pedestrians who might attempt to cross said street at said point from falling into the chasm made by said entrance, or to put them on notice of the danger to be incurred in attempting to cross said Commerce street at said place. But plaintiff avers that said defendant Montgomery Light & Traction Company negligently permitted said edge of

said entrance to remain in the condition alleged until the time of the injuries complained of, and plaintiff alleges that said negligence is the proximate cause of the injuries complained of."

The following is plea 2 interposed by Montgomery Light & Traction Company:

"For further plea defendant says: Plaintiff's intestate was guilty of negligence which contributed proximately to the injuries complained of in the complaint, in that on said day and date there existed at the foot of Commerce street a viaduct or underpass, which is described in the complaint, by legal authority; that over said viaduct, for the convenience of persons desiring to cross from one side of Commerce street to the other, was a safe and commodious bridge erected for the convenience of all those desiring to cross said Commerce street at that point thereof from one side to the other; that said bridge was visible and easily discovered at any time in the day or night by any person desiring to cross said street; that the other part of said underpass or viaduct was visible to all persons at any time of the day or night, in no condition to be safely crossed by the traveling public, but plaintiff's intestate, notwithstanding the fact that the foot of the bridge above mentioned was plainly apparent to him as a safe mode and safe route for his going from one side of said street to the other, negligently undertook to cross said underpass at another portion of the same, without any necessity for so doing, and as a consequence of his said negligence fell into said viaduct, which said negligence contributed proximately to his injuries."

Here follows Exhibit A, an ordinance authorizing Montgomery Street Railway Company, its successors and assigns, to open, operate, and extend its tracks on Commerce street, and along the east side of the underpass, and over the underpass, and across Commerce street.

The following charges were refused to plaintiff:

"(2) The court charges the jury that a pedestrian has a right to cross the street of a city, although there may be in and along said street a street railway track elevated above the grade of the street; and the mere fact that it is elevated to the height of 21 inches does not take away that right."

"(5) The court charges you that, if you are reasonably satisfied from the evidence that plaintiff's intestate was injured in the manner and at the time and place alleged, and was at the time exercising that degree of diligence which a reasonably prudent man similarly situated would have exercised, you must find for plaintiff."

"(8) If you are reasonably satisfied from the evidence that plaintiff's intestate sustained the injuries complained of at the time and place and in the manner alleged in the complaint, and was at the time exercising that degree of diligence which would probably be exercised by a person of ordinary prudence and diligence, situated under like circumstances, you must find a verdict for plaintiff."

The following charges were given for the defendant Montgomery Light & Traction Company:

"(C) If the jury find from the evidence that plaintiff's intestate while walking along or across the trestle of the Montgomery Light & Traction Company their verdict must be for defendant.

"(D) If there was light from the street lights or otherwise, so that any dangerous or unsafe excavation in Commerce street would have been revealed by said lights, and you should believe from the evidence that plaintiff's intestate knew the place in question, or had reason to believe it did exist, then it was his duty under the law to be on the lookout, to watch, to detect, and avoid it, and if he failed to do so, and thereby contributed to his injury, plaintiff cannot recover.

"(E) If the jury find from the evidence that plaintiff's intestate selected a dangerous way to pass from one side of Commerce street to the other, knowing that the way selected was dangerous when there was a safe way apparent to him, he was guilty of such contributory negligence as to constitute a full defense to this action."

"(M) If the jury should find from the evidence and the circumstances suggested thereby that plaintiff's intestate in going down or traveling on Commerce street left the sidewalk and walked or ran down the street car track, and continued thereon until he got on the part thereof which was raised several inches above the street, then he was a trespasser on said track, and defendant is under no duty to watch out for or provide for any person in such a situation.

"(N) Under the law a pedestrian walking along a street railway track which is elevated above the surface of the street is a trespasser, and the defendants nor any one of them were supposed to have contemplated that any one would do so, and were not charged with any duty of providing for the safety of any one doing so, and if the jury find from the evidence that plaintiff's intestate was walking along the track at the time of his injury, plaintiff cannot recover."

A. A. Evans, of Montgomery, for appellant. Rushton, Williams & Crenshaw and W. E. Andrews, all of Montgomery, for appellees.

McCLELLAN, J. The administratrix of Robert W. Benton, deceased, instituted this action against the city of Montgomery to recover damages for his death. About 7 o'clock p. m., December 17, 1912, he was found prone and unconscious on the paved floor of the underpass leading from a point on Commerce street, in the city of Montgomery, under the street car company's track which turns above the underpass across Commerce street toward the Louisville & Nashville Railroad station to the south, to the wharf on the bank of the Alabama river. He never regained consciousness, and died on December 18, 1912. At the instance of the defendant the city of Montgomery, the court awarded the city a conditional nonsuit; the condition being that the nonsuit should be effective unless the Montgomery Light & Traction Company, the owner and operator of the mentioned street railway, was made a party defendant in accordance with the provisions of Code, §§ 1273, 1274. The death of Benton is attributed by the plaintiff to negligent act, failure, or omission in leaving the place and its environs, in Commerce street at or adjacent to the place where the street railway crosses the underpass, so unguarded or without warning as that intestate fell into the underpass and was thereby injured. The underpass was an existing structure when the street railway constructed its track across it; and there is evidence that the guarding walls along the underpass rising from its base or floor were

removed by the street railway company's corporate predecessor in rights, and had not been restored or some substitute therefor provided when Benton met with fatal injury. The circumstances shown in the evidence required the submission to the jury's consideration and decision of this issue: Whether he was injured by falling into the underpass below the street level, or whether he was assaulted and his body thrown into the underpass below the street's level.

[1] In City of Birmingham v. Carle, 191 Ala. 539, 68 South. 22, L. R. A. 1915F, 797; Bloom v. City of Cullman, 73 South. 85,[1] and City of Birmingham v. Muller, 73 South. 30,[2] this court considered and construed Code, §§ 1273, 1274. In accordance with the provisions of these statutes, as they have been interpreted here, the court did not err in requiring the joinder of the street railway company as a defendant. At that stage of the cause it sufficiently appeared that the city's liability (if such there was) was secondary and conditional, as these statutes provided that the liability asserted was, if it existed, within the class denominated "b" in the opinion in City of Birmingham v. Carle, and in the Bloom Case, supra.

[2] Code, § 1275, is as follows:

*"Statements, Claims, or Demands for Injury Filed.*—No recovery shall be had against any city or town on a claim for personal injury received unless a sworn statement be filed with the clerk, by the party injured, or his personal representative in case of his death, stating substantially the manner in which the injury was received and the day and time, and the place where the accident occurred, and the damages claimed."

This statute creates as a condition precedent to a recovery from any city or town of damages for personal injuries received the filing of the statement described in the statute. The verified statement filed with the clerk of the city of Montgomery expressly recited that the injury on which the claim was predicated was suffered on December 18, 1912; whereas the undisputed proof showed that Benton was injured the day before, December 17, 1912. This conclusion is unescapable under the following adjudications delivered here in interpretation and in application of the statute quoted. Bland v. Mobile, 142 Ala. 142, 37 South. 843; Brannon v. City of Birmingham, 177 Ala. 419, 50 South. 63; McKinnon v. City of Birmingham, 71 South. 463.[3] In the last-cited decision this court noted the dictum, introduced into the opinion in the Brannon Case, supra, with respect to the necessity to recite in the statement exacted by the statute whether the injury was received in the daytime or the nighttime. Otherwise the authority of Brannon's Case is unimpaired. The lawmakers wrote very plainly in this statute. Two sessions of the Legislature have since convened; and no change of which we are aware has been made in this statute. To present a claim for an injury as being suffered on one day when it was suffered on another day cannot, in view of the plain terms of the statute, be held to be a substantial compliance therewith. If it should be regarded as a sufficient compliance to give notice of a claim as having arisen on the next day after it in fact had arisen, the clear mandate of the statute that the day should be given would be unjustifiably avoided. A difference, though of one day only, is a difference which, if accepted as sufficient, would preclude the application of the statute in cases where the difference was measurable by weeks, or by months within limitations otherwise provided with respect to actions against municipalities. The purpose of the statute's enactment is to accord the city authorities the "opportunity to investigate and adjust claims made against the city, without the expense of litigation." Brannon's Case, supra. That a city may rely for its action, and so govern it, in refusing payment or adjustment of a claim as made upon the express recitals set forth by the claimant under oath, cannot be doubted. In this instance it is possible the city authorities may have declined payment or adjustment of the claim as made because of special, related circumstances that were present on the date given in the statement filed with the city clerk. It resulted from the failure to make a proper presentation of the claim in question that the city of Montgomery was entitled to the general affirmative charge, and, in consequence, that errors, if any, committed by the trial court in respect of the city's liability were without injury to the plaintiff in so far as her case against the city was concerned. Bienville Water Co. v. Mobile, 125 Ala. 178, 27 South. 781; Adams v. Corona Coal Co., 183 Ala. 127, 62 South. 536; Merriweather v. Sayre Min. Co., 182 Ala. 665, 62 South. 70; Brammer v. Pettyjohn, 154 Ala. 618, 45 South. 646.

[3] The case was submitted to the jury on the issues consequent upon the averments contained in count B. The report of the appeal will reproduce that count. It is manifest that the breach of duty declared on in this count was with respect to the failure to install some guard or warning in the space intervening between the track of the street railway, on its east side, and the point where the north wall of the underpass was removed in the process of constructing the railway and its trestle over the underpass. In B. R., L. & P. Co. v. Jones, 153 Ala. 157, 163, 164, 45 South. 177, following pertinent pronouncement made in Glass' Case, 94 Ala. 581, 588, 10 South. 215, this court confined the right of a pedestrian to the use of a street as a street whereon a street railway had been laid to cases where the railway is flush with the street's surface, relegating to the category of a trespasser a pedestrian who moved upon a railway (otherwise than in crossing it) that was not so constructed in the street as to be flush with and usable as a part of the street's surface. The doctrine of

these decisions entirely justified the trial court in its rulings to the effect that, if Benton went upon and was using, when he fell (if so he did therefrom), the trestle of the railway company to cross the street, he was a trespasser, and was not entitled to recover; there being no evidence or contention that the company knew he was, or was about to become, there imperiled. In short, by properly invoked action of the court, the plaintiff's possible lead to a recovery against the railway company was restricted to the breach of duty with respect to the unguarded space intervening between the railway's east side and the remaining north wall of the underpass.

[4] Plea 2 interposed by the railway company was not subject to the demurrer. The report of the appeal will contain it. It predicates contributory negligence of the act of Benton in taking a dangerous course over the underpass, when a safe course was open and known to him. It is essential that pleas of this character should carry the allegation that the party charged knew, or by the exercise of ordinary care would have known, that one way was dangerous and one way safe, and that, in choosing, he took the dangerous course, thereby contributing to his injury. City of Birmingham v. Carle, 191 Ala. 551, 68 South. 22, L. R. A. 1915F, 797. The only ground of the demurrer presenting a debatable objection to the plea is that numbered 3, which points the criticism that the plea does not aver that the unsafe condition of the (alleged) dangerous course taken by Benton was apparent to him if he was exercising such care as an ordinary person would have exercised under the circumstances defined in the pleading. The plea's averments in that particular more than answer the demurrer's criticism. It avers that the unsafe condition was visible to all persons at any hour of the day or night, thus including all persons, whatever the measure of their prudence or care.

[5-7] While a pedestrian has the right to cross a street in which a railway is laid above the street's surface, yet in exercising this right he must bring to bear a degree of care and prudence referable to the changed situation wrought by the presence of the railway, so constructed within the confines of the street, provided, of course, he is aware, or reasonable prudence would so advise an ordinarily careful man, that the railway was so located. Charge 2, refused to plaintiff, purported to have the stated right declared to the jury. The charge was abstract. There was no evidence that Benton was, when injured, undertaking to cross the street. Non constat, he might have been moving along the railway. Furthermore, such an instruction, without having incorporated in it the rule of added care stated, possessed a possible misleading tendency that justified the court in refusing it. Again, in special charges given at plaintiff's instance the jury were advised of the right asserted in refused charge 2. The refusal of charges 5 and 8 requested for plaintiff cannot be held for error, since neither of them discriminated between the liability of the two defendants; the city of Montgomery not being, as stated, responsible in any event because of the failure to observe the statute (Code, § 1275) in presenting the claim sued on.

[8, 9] Charge C might well have been refused as being incomplete; but it contains a sufficient qualification with reference to Benton's presence on the trestle to avert the implication of error in giving it. Charge D given to the jury at the instance of the railway company was affirmatively faulty and should have been refused. To give it was error. It reads:

"The court charges the jury that, if there was light from the street lights or otherwise so that any dangerous or unsafe excavation in Commerce street would have been revealed by said lights, and they shall believe from the evidence that plaintiff's intestate knew the place in question or had reason to believe it did exist, then it was his duty under the law to be on the lookout, to watch, to detect, and avoid it, and if he failed so to do, and thereby contributed to his injury, plaintiff cannot recover."

In order to conclude to Benton's contributory negligence, barring a recovery by this plaintiff, he must have omitted to exercise ordinary care under the circumstances. This charge, in one vital alternative, hypothesized his guilt of contributory negligence upon the mere fact that Benton had reason to believe the dangerous place existed; whereas a pedestrian, under the circumstances here disclosed, is not guilty of contributory negligence unless in the exercise of ordinary prudence under the circumstances he would have known of the existence of the danger in the way. The charge is also susceptible of an interpretation that would make it declare a higher measure of care with respect to inspection and watchfulness than the law exacts of one who has only general knowledge of a dangerous way, or that he is in the neighborhood, on his route, of such dangerous way.

[10] There is no fault in charge E given at the company's request, if "apparent" is accorded the meaning synonymous with "obvious."

Charges M and N given at the company's request conform to what has been heretofore ruled as upon the authority of B. R., L. & P. Co. v. Jones, supra. There was no error in giving them.

For the error stated, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.