(78 South. 375)
PORTER v. LOUISVILLE & N. R. CO.
(8 Div. 68.)

(Supreme Court of Alabama. Feb. 7, 1918. Rehearing Denied April 7, 1918.)

1. NEGLIGENCE ⊛101—INJURIES TO SERVANT — CONTRIBUTORY NEGLIGENCE — FEDERAL EMPLOYERS' LIABILITY ACT.

In actions brought under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1916, §§ 8657–8665]), contributory negligence is not a complete defense, but is only considered by way of reduction of damages.

2. PLEADING ⊛194(1)—CONTRIBUTORY NEGLIGENCE—PLEAS IN BAR—DEMURRER.

In action under federal Employers' Liability Act, providing that contributory negligence is provable, only to reduce damages, demurrer to pleas in bar, which were in substance pleas of contributory negligence, should have been sustained.

3. MASTER AND SERVANT ⊛262(4)—FEDERAL EMPLOYERS' LIABILITY ACT—CONTRIBUTORY NEGLIGENCE—PLEAS IN BAR.

In action under federal Employers' Liability Act, pleas that plaintiff on cars making a gravity switch knew that there probably were cars on the switch, and that it was his duty in the dark to go at a lesser speed, etc., were pleas of contributory negligence, and not assumption of risk, and were demurrable.

4. MASTER AND SERVANT ⊛285(11) — INJURIES TO SERVANT—CAUSE OF INJURY—QUESTION FOR JURY.

Whether brakeman falling under wheels of cars, making a gravity switch in the dark, fell off a car, or was thrown off by sudden impact with stationary cars, held, under the evidence, for the jury.

5. MASTER AND SERVANT ⊛286(34) — INJURIES TO SERVANT—NEGLIGENCE OF MASTER—QUESTION FOR JURY.

Whether a brakeman riding on the leading car of a string, making a gravity switch in the dark, was negligent in allowing a collision with a stationary car, held, under the evidence, a question for the jury.

6. MASTER AND SERVANT ⊛295(4)—ASSUMPTION OF RISK.

An instruction that, if the jury believed that a servant assumed all the risks arising out of the conduct of the work in the manner which defendant's witnesses testified switching operations were conducted at such station, and if he was aware of the manner of conduct of such operation he could not recover, was erroneous as comprehending risk of negligent discharge of duty by a fellow servant.

7. MASTER AND SERVANT ⊛286(34) — INJURIES TO SERVANT—NEGLIGENCE—QUESTION FOR JURY.

Whether one in charge of gravity switch of a string of cars in the dark was negligent in telling brakeman operating the string that there

was a stationary car near the platform, when in fact the car was 100 feet nearer, whereby a collision occurred, held, under the evidence, for the jury.

Appeal from Circuit Court, Lauderdale County; C. P. Almon, Judge.

Suit by Irvin C. Porter, administrator of the estate of L. O. Gulley, deceased, against the Louisville & Nashville Railroad Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Suit by personal representative of the estate of L. O. Gulley, for recovery under different counts, for the benefit of the father of deceased; damages for his death, and for his physical suffering between the time of his injury and his death—a period of about three hours. Deceased was employed by the defendant in the capacity of a brakeman on January 20, 1916, and was engaged as such on one of defendant's trains operating between Columbia, Tenn., and Florence, Ala., at the time he met his death. This suit is brought under the federal Employers' Liability Act. There was verdict and judgment for the defendant, from which plaintiff prosecutes this appeal.

Plaintiff's intestate received his injuries about 5 minutes after 7 o'clock on the night of January 20, 1916, and died about 10 o'clock the same night. Some of the evidence tended to show that it was "a rather dark night"; but there is evidence that there was some light from the engine, and that the brakeman on the train had lanterns. The statement of the case, with pertinent excerpts from the evidence, is found in brief of counsel for appellant, and its correctness is not questioned by opposing counsel. It appears to be correct, and is here set out as follows:

"The train consisted of an engine and sixteen cars. Just before reaching the defendant's freight depot at Florence, the grade of the track is down, and 500 or 600 feet north of the depot a switch track leads from, and to the right of, the main line, and approximately parallel thereto alongside the defendant's freight depot, which track is known as the house track. Another switch track leads from, and to the left of, the main track, and is known as the scale track. The conductor on this train had directed that the engine and first nine cars be placed on the scale track and the seven rear cars be placed on the house track, and to that end the train stopped before reaching these switches, and McCandless, the head brakeman, preceded the train and lined up the switches, and signaled it to come forward. The engine and nine cars left the main track onto the scale track, and the rear seven cars were allowed to proceed by force of gravity, and were, by McCandless, turned onto the house track. One Hollis was brakeman on the front end of these seven cars, and L. O. Gulley, the deceased, was on the rear end of the fifth car. As the string of seven cars was leaving the main line onto the switch, Gulley tightened the brake on his car, causing them to stop, and then called to McCandless to assist him to unloose it. McCandless climbed up on the car and assisted him to unloose it, and then the cars started in motion, and as he was leaving the car Gulley was standing at the brake on the rear end of the fifth car, and Mc-

Candless hallooed to him to look out for a car down about the platform.

"Hollis testified: 'As we passed, he [McCandless] hallooed that there were cars down about the platform on the house track. He hallooed that as me and Gulley passed.' Hollis further testified: 'McCandless helped Gulley to release his brake, and when that was done the string of cars started again. That string of cars came in contact with another car—a single car—that was north of the platform there. That single car had the brakes set, and when the seven cars came in contact with it, it moved a car length. It was pushed a car length. A car has the brake set when a chain is wound around the brake staff and a dog fastened on the wheel, and the effect is to keep the wheels from turning.'

"Gulley was last seen standing at the brake on the rear end of the fifth car. This string of cars then moved four or five car lengths before it came in collision with the single car, and then moved a car length and stopped, and Gulley then cried out from underneath the train, and it was discovered that one car had passed over him and the front wheels of the last car were against him. This happened at 5 minutes past 7, and Gulley died about 10. He was conscious and suffering pain.

"Hollis testified that his duties on the front end were to help hold the cut of cars and keep them under control so that there would be no accident if they coupled with another car.

"McCandless testified: 'It is the duty of the front brakeman to look out for obstructions on the track. It is the duty of the front brakeman on discovering an obstruction to set his brake and stop. One man can control as many as seven cars, and could have brought seven cars to a stop.'

"The night was dark, and Hollis testified that he never did see the single car on the track with which they collided, and further: 'When I was on the front end I was not keeping an observation in any particular direction. Of course I was going south.' Gulley was on the rear end of the fifth car 200 feet from the front end, and of course in the darkness of the night he could not see what was in front of the string of cars. The evidence further showed that Gulley's mother was dead, that he was unmarried, and that he contributed to his father's support. Gulley was an extra brakeman, and did not regularly make this run. Hollis and McCandless, who were regular men, testified that they had never made this run before with Gulley. Wesson, an extra brakeman, testified that he had made that trip before and placed cars in on the house track in the same manner as they were placed on this occasion, and that Gulley was along."

Some of the counts of the complaint averred negligence in a general manner, to the effect that defendant negligently caused the car to run over plaintiff's intestate; and, under count 9, negligently caused or allowed a string of cars upon which plaintiff's intestate was riding to collide with a standing car on said house track. In addition to the general issue, the defendant pleaded a number of special pleas, apparently upon the "assumption of risk." The court overruled demurrers to several of these pleas.

The substance of plea 3, to which demurrer was overruled, may be stated as follows: That plaintiff's intestate knew that it was probable and likely there was a car on the house track, and knew that the force of the impact of the cut of cars on which he was riding and the cars stationed on the house track would depend upon the rate of speed at which the string of cars came in contact with the standing cars; that it was the duty of plaintiff's intestate to regulate the speed of the said cut of cars by means of a hand brake, and that the plaintiff's intestate failed to slacken the speed of the cut of cars as he should have done, but knowingly allowed and permitted them to collide with the standing car, going at a high rate of speed, and knowing that said collision would cause an extraordinary stop or jar of the cut of cars. Among other things the demurrer to this plea takes the point that the plea is one of contributory negligence, and is pleaded in bar to the suit. The other pleas to which demurrer was sustained need not be set out, but state in varying language the substance of plea 3. Charge 51, given at the request of defendant, reads as follows:

"I charge you, gentlemen of the jury, if you believe the evidence that intestate assumed all the ordinary risks arising out of the conduct of the work in the manner which defendant's witnesses have testified switching operations were carried on and conducted at Florence, Ala., then the plaintiff cannot complain or fix liability upon the defendant by reason of the fact that intestate was injured as a result of such operation, if you further believe from the evidence that intestate was aware of the manner of conduct of such operation."

Charge B, given for the defendant, is as follows:

"If you believe from the evidence that McCandless told Gulley that there was a car on the house track about the platform, and that said car was further north than where McCandless had stated, this statement would not constitute negligence on the part of the defendant, through its agents or employés, for which plaintiff would be entitled to recover damages in this case."

Callahan & Harris, of Decatur, for appellant. Eyster & Eyster, of Albany, for appellee.

GARDNER, J. [1] This suit is confessedly brought under the federal Employers' Liability Act, and in such cases contributory negligence is not a complete defense, but is only considered by way of reduction of damages.

[2] The pleas, the substance of which are set out in the foregoing statement of the case, were pleaded in bar to the cause of action, and, if they were in fact pleas of contributory negligence, the demurrer taking the point should have been sustained.

[3] Speaking of the difference between the defense of contributory negligence and that of assumption of risk, the Supreme Court of the United States, in Seaboard Air Line R. R. Co. v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475, said:

"The distinction, although simple, is sometimes overlooked. Contributory negligence involves the notion of some fault or breach of duty on the part of the employé; and since it is ordinarily his duty to take some precaution for his own safety when engaged in a hazardous

occupation, contributory negligence is sometimes defined as a failure to use such care for his safety as ordinarily prudent employés in similar circumstances would use. On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employé. The risks may be present, notwithstanding the exercise of all reasonable care on his part."

See, also, Yazoo & Miss. Val. R. R. Co. v. Wright, 235 U. S. 376, 35 Sup. Ct. 130, 59 L. Ed. 277; L. & N. R. R. Co. v. Fleming, 194 Ala. 51, 69 South. 125; Southern Ry. Co. v. Fisher, 199 Ala. 377, 74 South. 580.

We construe these pleas as showing a want of ordinary care and prudence on the part of the plaintiff's intestate in the performance of his duties, and as charging a case of aggravated negligence; that these pleas were therefore pleas of contributory negligence, and not of assumption of risk. The court in its oral charge to the jury instructed them that these pleas were of assumption of risk. The action of the court in overruling the demurrer to said pleas must work a reversal of the cause.

Counsel for appellee in their brief do not seem to controvert the insistence of appellant upon this question, but they urge that any errors committed were without injury, for the reason that the evidence entirely failed to make out a case for the plaintiff. A material portion of the evidence appears in the statement of the case, and need not be here reviewed. It is to be noted that the stationary car (which had the "brakes set") was moved a car length by the impact of the cut of cars on which plaintiff's intestate was acting as brakeman. The evidence also tends to show that these cars were moving at an accelerated speed at the time of the collision.

Plaintiff's intestate was found under the train, and one car had passed over him, and the glass from his broken lantern was found on the bumpers between the cars. It can clearly be inferred that at the time of the collision he was at the brakes on the rear of the fifth car, and after the collision the train moved one car length, and only one car passed over him.

[4] We are of the opinion that the jury could readily infer from the facts and circumstances surrounding his injury that the deceased fell under the train at the time of the collision between the cars, produced by the sudden impact of the string of cars with the car standing upon the track north of the platform. Bromley v. R. R. Co., 95 Ala. 397, 11 South. 341; Benton v. City of Montgomery, 200 Ala. 97, 75 South. 473.

[5] So, also, we are of the opinion the jury could infer negligence on the part of Hollis, who was a brakeman on the front end of this string of cars, whose duties, according to his testimony, were to hold the cars under control, so that there would be no accident, and to look out for obstructions on the track, and on discovery of same to set his brakes and stop the car. It further appears from the evidence that one man can control as many as seven cars, and could have brought them to a stop. Witness Hollis stated that he "was not keeping an observation in any particular direction." Under the evidence in this record, it was for the jury to say as to whether or not there was any negligence on the part of Hollis proximately contributing to the injury. L. & N. R. R. Co. v. Thornton, 117 Ala. 281, 23 South. 778; A. G. S. R. R. Co. v. Skotzy, 196 Ala. 25, 71 South. 335. We therefore think the court properly submitted these questions for the jury's determination. Some of the witnesses testified that the movement of the cars on the night of the injury was usual and customary, and that the switching of these cars was done in the usual and customary manner. As we have stated, it was for the jury to find whether or not negligence was involved in the movement of the cars on this occasion.

[6] Charge 51, above set out, instructed the jury that plaintiff's intestate assumed all the ordinary risk incident to the manner in which his fellow servants discharged their duties in the switching operation, which would comprehend a risk of a negligent discharge of duty by a fellow servant. We are of the opinion this charge should not have been given.

[7] The evidence tends to show that one McCandless, a brakeman on this train, was in charge of the movement of switching the seven cars on the house track. He lined up the switches, and gave the signals for the cars to be moved. The evidence further tends to show that when this cut of cars was moving into the house track McCandless told Gulley and the brakeman Hollis that there was a car on the house track "down about the platform." There is evidence tending to show, however, that this single car, stationary upon the track, was not at the platform, but was between the platform and the switching cars. Indeed, some of the evidence in the record tends to show that this car was as much as possibly 100 feet north of the platform. The jury, therefore, was authorized to find that McCandless, acting within the scope of his authority in warning deceased and Hollis as to the condition of track, misled them as to the distance of the obstruction, and that negligence could be predicated thereon.

Some of the counts of the complaint averred the negligence of the defendant in very general terms. As to whether or not the statement made by McCandless to Hollis and plaintiff's intestate would constitute, under all the evidence in the case, such negligence, was, we think, a question for the jury, and that charge B invaded their province, and should have been refused. A few other questions remain as to charges, which we do not consider need specific treatment.

What we have here said should be sufficient guide upon another trial of the cause.

For the errors indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.