248 So.2d 566

**Scarlet O'Hara KING, etc., et al.,**

v.

**J. B. WINSLETT, etc., et al.**

6 Div. 612.

Supreme Court of Alabama.

April 29, 1971.

Rehearing Denied June 10, 1971.

George S. Brown, Birmingham, for appellants.

Rives, Peterson, Pettus, Conway & Burge, Birmingham, William Gerald Stone, Bessemer, for appellees.

COLEMAN, Justice.

Plaintiffs appeal from judgment for defendants in an action for death of Kyser King, Jr., alleged to have been proximately caused by the negligence of defendants.

Plaintiffs allege that they are the widow and dependents of decedent; that decedent was an employee of Birmingham Sash & Door Company, a corporation; that decedent was a business invitee at a partially constructed home owned by the defendant Hamrick; that decedent was delivering building supplies ordered for delivery to said house by the defendant Winslett who was supervising the construction of the house under the control of defendant Bessemer Scaffold Company, a corporation; that defendants negligently allowed an unguarded opening or hole in the floor of the house to remain unguarded at the time decedent was in the house as a business invitee; that decedent fell through said unguarded hole in the floor and sustained injuries of which he died; and that the injury and death of decedent was proximately caused by the concurring negligence of the defendants in negligently maintaining or permitting an unguarded hole in the house as aforesaid.

Plaintiffs further aver that they were dependents of decedent; that the aforesaid employment of decedent was subject to the Alabama Workmen's Compensation Law; that by reason of ". . . . the debt to the said Kyser King, Jr., . . . ." plaintiffs are receiving compensation payments from decedent's employer or its in-

surer; and that plaintiffs bring this action pursuant to § 312, Title 26, Code 1940.

 Plaintiffs struck all defendants except Winslett. The court gave the affirmative charge without hypothesis in favor of Winslett. The giving of this charge for Winslett is assigned as error.

The evidence is to effect that defendant Winslett was supervising construction of the house under a contract with defendant Hamrick; that the house had been under construction about three weeks and was about a third completed; the frame appears to have been erected; siding and weather boarding were up; windows and doors were open; the roof had not been put on the house other than the black felt, temporary roof; the subflooring had been put in but not the top flooring.

No window or door had been installed. Where a door or window is referred to, the reference is merely to an opening between studs or framing in which a door or window would be installed later. There was no door or window which could be shut so as to close the opening.

A number of pictures of the house were introduced in evidence and a blackboard diagram was used in examination of witnesses. The blackboard diagram is not in the record, and, for that reason, the testimony is vague in some respects. As we understand it, a 2-inch by 12-inch plank about 12 feet long afforded access from the ground to the open front porch; the access was to a room or vestibule. In going in a straight line from the front opening to the back of the house, one would pass through the living room or vestibule area to a space for a door opening into the den; a few feet inside this door

opening there was an opening or hole in the den floor; this opening in the floor was for a fireplace and chimney to be built from the basement up through the roof. The hole in the floor was a rectangle about 8 feet long and 33 inches wide. There was an opening for a window in the wall at the far side of the opening in the floor. This wall was the back wall of the house.

Defendant Winslett had ordered 35 sheets of plywood from decedent's employer. About lunch time, decedent drove his employer's truck carrying the plywood to the house site. No one else was present. Around two o'clock in the afternoon, decedent was found lying on the basement floor under the hole with a head injury. The hole in the floor was not covered. There was no railing or barricade around the hole. One piece of plywood was lying on the den floor and part of the plywood sheet was lying partially over the opening. The plywood sheet was three-eighths of an inch thick, 8 feet long, and 4 feet wide. Decedent died from the head injury.

Plaintiffs' witness, Shelton, who was a truck driver for decedent's employer, testified that he had no trouble seeing the hole in the floor when he walked into the house on the afternoon of decedent's injury.[1] The trial court in colloquy with counsel remarked:

"I looked at all the exhibits and every one shows this hole back in the den and from the front door all the way back, you can see it. . . . ."

The conclusion seems inescapable that the hole in the den floor was plainly visible and open and obvious.

---

1. Shelton testified:
"Q Did you have any trouble seeing that hole in the floor when you walked in?
"A No, but I liked to have stepped in it.
"Q It was right inside of the door?
"A Yes, sir.
"Q How close to the door was it?

"A I don't know, sir. I couldn't tell you how close it was.
"Q Give us some idea?
"A It was close enough if you walked through the door and didn't watch you might not see it.
"Q But, if you looked, you could see it?
"A Yes, sir."

A witness for plaintiffs testified that he was a general contractor and had been in the business for eleven years in the area where the house was. In answer to a hypothetical question asking for the opinion of the witness as to whether an ordinarily skilled contractor in the ordinarily skilled construction of such a house in that location would have left such a hole uncovered without barricade around the hole or a warning, the witness testified:

"A In my opinion, in the construction work it's a matter of thinking ahead; trying to eliminate any provisions where a party could get hurt. If this opening was in a position where an employee or a trespasser might get hurt, then in my opinion it should have been covered or barricaded or a warning sign of some kind put up there."

As we understand the evidence, the foregoing is a statement of the material evidence bearing on the question whether the defendant was entitled to the affirmative charge without hypothesis.

Plaintiffs rely heavily on Foster & Creighton Co. v. St. Paul Mercury Indem. Co., 264 Ala. 581, 88 So.2d 825, wherein this court held that a defendant was not entitled to the affirmative charge in an action for the death of a workman who had fallen through a hole in the third floor of a building under construction. *Foster & Creighton* differs from the instant case in several particulars. In paragraph [1] of the opinion, four tendencies of the evidence are set out which made the issue of appellant's liability a jury question. The second tendency was that after the employees of the decedent's employer, Shook & Fletcher, had come on the premises to work, the appellant, Foster & Creighton, had covered the holes on the second and third floors. The fourth tendency is that, on the morning of the accident, appellant's carpenter came to the third floor to put a guard rail around hole No. 2, and this fact was known to the employees of decedent's employer. The importance of these ten-dencies of the evidence is pointed out in paragraph [4] where this court said:

". . . . Foster & Creighton's liability arose out of its assumption of the duty to cover the hole through which Robinson fell, and there is no evidence in the record to indicate that Shook & Fletcher assumed a similar duty." (264 Ala. at 590, 88 So.2d at 853.)

There is however, an even more important difference between *Foster & Creighton* and the instant case. In *Foster & Creighton,* there was evidence to support a finding that decedent's injury was the proximate result of Foster & Creighton's negligence in failing to cover the hole. In the instant case there is no such evidence.

In Lamson & Sessions Bolt Co. v. McCarty, 234 Ala. 60, 173 So. 388, in an action for injury to an invitee allegedly resulting from defendant's negligence in maintaining its floor, this court held that defendant was entitled to the affirmative charge and reversed a judgment for the plaintiff. The plaintiff had gone to defendant's premises to deliver a casting to defendant's machine shop. The floor of the shop had on it a hose over which plaintiff tripped and fell. This court said:

"We entertain no doubt but that the plaintiff, at the time he received his injuries, was an invitee upon the defendant's premises, and the first and real question to be determined is: Was the plaintiff's injury produced proximately by the negligence of the defendant in maintaining the floor in its machine shop, where plaintiff fell, in an unsafe condition for the use of invitees upon said premises?

"This court is firmly committed to the proposition that the occupant of premises is bound to use reasonable care and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation, expressed or implied, for the transaction of business, or for any other purpose beneficial to him; or, if his premises are in any respect dangerous, he must give such visitors suffi-

cient warning of the danger to enable them, by the use of ordinary care, to avoid it. Geis v. Tennessee Coal, Iron & R. R. Co., 143 Ala. 299, 39 So. 301.

"This rule, as was held in the case of Farmers' & Merchants' Warehouse Co. v. Perry, supra [218 Ala. 223, 118 So. 406], also includes (a) the duty to warn an invitee of danger, of which he knows, or ought to know, and of which the invitee is ignorant; and (b) the duty to use reasonable care to have the premises to which he is invited in a reasonably safe condition for such contemplated uses, and within the contemplated invitation.

"In determining whether such care has been exercised, it is proper to consider the uses and purposes for which the property in question is primarily intended. 45 C.J. p. 829.

"The machine shop was the private property of the defendant, used for manufacturing purposes, and was not intended as a place for the public to resort. The fact that persons did come upon the premises occasionally upon invitation, expressed or implied, to transact business, could not 'beget or pervert a rule which loses sight of the fundamental uses and purposes of [the plant].' Hoyt v. Kansas City Stockyards (Mo.Sup.) 188 S.W. 106, 109.

". . . . . . . . . .

"In 45 C.J. § 244, p. 837, the rule is thus stated: 'The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care.'

"Of course, the mere fact that plaintiff was injured while in the shop of defendant raises no presumption of negligence, and if there was nothing in the evidence to establish negligence, save the fact of plaintiff's injury, the defendant would be entitled to the general charge." (234 Ala. at 63, 173 So. at 391.)

In Claybrooke v. Bently, 260 Ala. 678, 72 So.2d 412, this court reversed a judgment for plaintiff and held the appellant, defendant, entitled to the affirmative charge. The plaintiff's intestate, Jesse, had been injured while he was holding up a section of a ramp so that a truck could pass. This court said:

"Jesse had worked at the gin long enough to be familiar with the exact status of the locus in question. If it was not a reasonably safe place in which Jesse was employed, he knew it as well as anybody else. He had been working there about six months, and its condition was open to his view, and the ramp was raised and lowered by him, so that he could not claim to be ignorant of its danger if it was a danger.

"Of course the operation of such a truck is dangerous and difficult. Jesse knew what it was doing and his business at the moment was to watch it and signal the driver of any condition which he should correct. He did signal him, and the truck was pulling out and came in contact with some part of the ramp which Jesse was holding. There was no hidden danger. It was a known and obvious danger, of which Jesse knew or should have known. Defendant could assume that he would observe it and guard against it. The affirmative charge requested by defendant should have been given, and its refusal was error to reverse." (260 Ala. at 680, 72 So.2d at 414.)

The principles enunciated in the two last cited cases have been approved as follows:

"Also, charge 22 substantially follows charge E in Claybrooke v. Bently, 260 Ala. 678, 72 So.2d 412, and a statement of law quoted and approved in Lamson & Sessions Bolt Co. v. McCarty, 234 Ala. 60, 173 So. 388 [4]. The concluding words of charge E in Claybrooke v. Bently, supra, are ' * * * and he (the owner of the premises) cannot be held liable for the death of plaintiff's intestate if the death resulted from a danger which was obvious or should have been observed in the exercise of reasonable care.'" McRee v. Woodward Iron Co., 279 Ala. 88, 92, 182 So.2d 209, 211.

There was no evidence presented in this case that indicates what caused the decedent to fall. There is not even any direct evidence that he did fall through the hole in the den floor. Such a finding can probably be sustained as a reasonable inference to be drawn from the facts which are shown by direct evidence; but, this evidence completely fails to support an inference that his fall was the proximate result of negligence on the part of the defendant Winslett. A verdict for plaintiff in the instant case would, of necessity, be based upon speculation and conjecture that there was a causal connection between some theory of defendant's negligence and the injury sustained by decedent. See Green v. Reynolds Metals Company, 5th Cir., 328 F.2d 372.

We are of opinion that the court did not err in giving the affirmative charge for Winslett.

■ Plaintiffs contend that the court erred in giving the affirmative charge in that the court gave the charge because the court erroneously found as a matter of law that decedent was guilty of contributory negligence. It does not appear that the court gave the charge for that reason. If, however, the court did erroneously give the charge for that reason, it would not be ground for reversal. Appellants can take nothing in consequence of an erroneous conclusion inducing the trial court to give the general affirmative instruction for appellee, if appellee was otherwise entitled to such instruction. Burke v. Curtis Aeroplane Motor Co., 204 Ala. 354, 85 So. 703. As already stated, the evidence does not indicate that decedent suffered injury as the result of any negligence of Winslett; and, in the absence of evidence showing that Winslett's negligence was the proximate cause of decedent's injury, plaintiffs were not entitled to recover judgment against Winslett and he was entitled to the affirmative charge.

Appellee contends that the judgment should be affirmed on other grounds, but consideration of those grounds is deemed unnecessary.

Affirmed.

HEFLIN, C. J., and SIMPSON, BLOODWORTH and McCALL, JJ., concur.