In an earlier decision in this case this Court reversed the trial court, which had granted a motion to dismiss, and the case was remanded. Peddycoart v. City of Birmingham, Ala.,354 So.2d 808 (1978). It is before us once again following a directed verdict for the defendant.
We quote from the appellants' brief for the two issues they present and which we will address:
I
 Should this Court establish or allow a cause of action in this state based on Restatement of Torts, 2nd Edition, Section 46, whereby plaintiffs claim severe emotional distress and mental anguish from which they were caused to suffer bodily harm as the result of the reckless conduct of the defendant?
. . . . .
II
 Did the Court below err in granting the defendant's motion for a directed verdict based on:
 City of Anniston v. Rosser [275 Ala. 659), 158 So.2d 99 (1963)
 Hunnicutt v. City of Tuscaloosa, 337 So.2d 346
(Ala. 1976)
 McCarroll v. Bessemer, 289 Ala. 449, 268 So.2d 731
(Ala. 1972)
The record shows that the trial court gave a number of reasons for its decision to grant the defendant's motion for a directed verdict. By delineating the issues above, the plaintiffs-appellants have limited our review to only two of those grounds, Piper Ice Cream Co. v. Midwest Dairy ProductsCorp., 279 Ala. 471, 187 So.2d 228 (1966), and, for the sake of clarity, we will consider them in inverse order.[1]
II. Based upon the briefs and the record we believe that this issue deals with whether or not the plaintiffs have complied with *Page 538 
the statutory notice requirements for claims against the City of Birmingham. The City maintains that the nonclaim statute was never complied with by the plaintiffs because the proof establishes that the "incident" occurred one day prior to the date stated in the claim.
The plaintiffs' sworn claim stated:
 On or about November 13, 1976, Gary Peddycoart was caused to be incarcerated in the Birmingham City Jail on a charge of reckless driving and carrying a concealed weapon. At approximately 11:00 p.m. on said date, we received notice of said incarceration of Gary Peddycoart. The telephone call was received from a police officer. We arrived at the City Jail at approximately 1:00 a.m. on or about the morning of November 14, 1976, after having received the aforesaid call. Upon our arrival, we were told by an unknown officer at the desk. . . .
Thereafter the plaintiffs alleged that they were told by this officer that Gary Peddycoart (who in fact was alive) had committed suicide while in his jail cell. This incident, alleged to have occurred on November 14, 1976 was made a basis for plaintiffs' tort action which was filed later and which we will discuss under I. The testimony of Vera, Floyd, and Gary Peddycoart established that the incident occurred on November 14. Paul Ray, the Peddycoarts' son-in-law, testified on the other hand that the telephone call he received from Vera about Gary's death occurred about five minutes until two o'clock on the morning of November 13. Vera's other son, Allen Woellhardt, testified that on November 13 he was working from seven to three-thirty o'clock in the morning, and was notified of the incident by Paul around two o'clock (on November 14).
In addition to this testimony, the plaintiffs introduced the hospital emergency room record and the arrest report on Gary. The hospital report showed that an unknown white male had been brought from jail by ambulance and pronounced dead on arrival on November 13. The police department arrest report showed Gary Peddycoart "booked" at 2255 (10:55 p.m.) on November 12 and released on bond at 0400 (4:00 a.m.) on November 13.
Thus the defendant contends that while the plaintiffs gave notice of a claim which occurred "on or about November 14," their proofs showed that the incident made the basis for their action occurred on the morning of November 13. According to the City's argument, this amounts to no claim having been filed for the incident occurring on November 13, 1976. In support of this argument the defendant cites City of Anniston v. Rosser,275 Ala. 659, 158 So.2d 99 (1963), and Benton v. City ofMontgomery, 200 Ala. 97, 75 So. 473 (1917), for the proposition that a claim against a city must be filed for the injuries received on the date proved.
The pertinent statute, Tit. 62, § 659 (Code of 1975, §1-1-10) Alabama Code of 1940 (Supp. 1958) requires a sworn statement
 [s]tating substantially the manner in which the injury was received and the day and time and place where the accident occurred, and the damage claimed, and stating with substantial accuracy the nature and character of the injury received. . . . [Emphasis added.]
Under this requirement it is enough if the day on which the injury was received is stated substantially. The word "substantially," as it is used in the first portion of § 659, without separation by punctuation, modifies not only the manner of the injury but the day, time and place where the accident occurred. Our authorities recognize that substantial compliance is sufficient, and we have given the section a liberal construction. Cole v. City of Birmingham, 243 Ala. 561,11 So.2d 148 (1942). Thus the allegation in the claim that "on or about November 14" the incident occurred, was a sufficient notice of the day of the month on which the plaintiffs relied so as to give to the city authorities an ample opportunity to investigate the claimed occurrence and injuries.
We do not believe that either City of Anniston v. Rosser,supra, or Benton v. City *Page 539 of Montgomery, supra, requires a finding that there was a fatal variance between the claim filed here and the proof adduced to establish it. In Benton the plaintiff's claim alleged that the injury occurred on December 18, and the undisputed proof showed that the injury occurred on December 17, one day earlier. This was held to be insufficient compliance with the nonclaim statute. And in Rosser, the plaintiff's claim alleged that the accident occurred on June 11, 1959, but all of the evidence showed that it occurred one day earlier, or on June 10, 1959. This too was held to be an improper presentation.
The situation here is different, however. In this case the plaintiffs have alleged in their claim an incident which occurred, not upon any one specified date, but "on or about November 14." That phrase, as defined in Black's Law Dictionary, 5th ed. at 982, is
 [u]sed in reciting the date of an occurrence . . . to escape the necessity of being bound by the statement of an exact date. . . .
Not being so bound, the plaintiffs could prove another date not substantially varying from the date actually alleged. In other words, the plaintiffs could have proved that the incident occurred on either November 13 or November 14 under their allegations. Therein lies another distinction between this case, on the one hand, and Rosser and Benton on the other. All of the proof in the latter cases established a different date from the specific date alleged. But in this case some of the plaintiffs' proof established November 13 as the date of the incident, while some of plaintiffs' proof established November 14 as that date. The hospital report and the police report, both introduced by plaintiffs, were not conclusive but at best only prima facie evidence that the incident occurred on November 13. Cf. Hurst v. Kirby, 213 Ala. 640, 105 So. 872
(1925); Sisson v. Swift, 243 Ala. 289, 9 So.2d 891 (1942); see generally 32 A C.J.S. Evidence § 766 at 59. The other evidence of the plaintiffs established the incident as having occurred on November 14, creating a factual issue, i.e., the true date of the incident, for the jury. A directed verdict should not be given when the evidence is in conflict, whether the conflict is presented in testimony of the same witness, or that of several witnesses for the same party, or the different parties to the suit. M. Frank Sons Co. v. Davis, 214 Ala. 601, 108 So. 575
(1926); see also Merchants Bank v. Cotton, 289 Ala. 606,269 So.2d 875 (1972).
Accordingly, we have concluded that the trial court was in error in entertaining as one of its grounds for granting the directed verdict, that the notice provisions of the nonclaim statute were not met.
I. In American Road Insurance Company v. Inmon, Ala., [1980],394 So.2d 361 (1980), this Court recognized the theory of the tort of "outrageous conduct" as described in Restatement(Second) of Torts, Section 46. In that case as in this, however, the facts adduced did not rise to the requirements of the law.
The plaintiffs' action under Section 46 was based upon a bizarre incident which began at the Birmingham city jail. A young man named Gary Peddycoart was incarcerated there on either the night of November 12 or November 13, 1976. (The exact date is disputed, and is the subject of our discussion under issue II.) Sometime during that evening the police sergeant assigned to handle inquiries at the jail learned that a young man had hanged himself in his cell. The sergeant pulled the file cards on three young men then in custody, one of whom was Gary Peddycoart. In the early morning hours of the next day, Floyd and Vera Peddycoart (Gary's parents) and Charlotte Peddycoart (Gary's wife) arrived at the jail. Leaving Vera and Charlotte outside, Floyd went inside and inquired about his son. He was told by the sergeant that his son had attempted suicide (by hanging himself) and had been sent to a hospital. Floyd, Vera and Charlotte immediately drove to the hospital and, after waiting for about thirty minutes, were taken into a room where a doctor told them, "I'm sorry, I did everything I could." A bag of clothes, with "Peddycoart" written on it, was *Page 540 
brought into the room, apparently sent from the jail. Vera told the nurse that these were not her son's clothes. Shortly thereafter they were allowed to view the body of a man lying on a table. Charlotte kissed the man. When Vera saw blood on the sheet, she fainted. Recovered, she telephoned another son who subsequently arrived at the hospital with their son-in-law. Allen, the other son, after viewing the body, said to Vera, "Mom, that's not Gary. He is too short. And the scars are not on him." Vera and Floyd again viewed the body, and Floyd then returned to the jail where he found Gary alive. Floyd then effected Gary's release from jail.
Thus Floyd Peddycoart was the only one of these plaintiffs to whom any city employee imparted any information and who had any direct contact with a city employee concerning Gary Peddycoart. Floyd relayed to Vera and Charlotte the message he had been given at the jail's office. The evidence discloses that there was an interval of time of approximately one hour between the time Floyd received the erroneous information and the time when the mistake was known to them. While the plaintiffs doubtless did suffer some degree of emotional distress in that interval of time, under the principle they espouse that distress must have been caused by Birmingham's "extreme and outrageous conduct" which "intentionally or recklessly" caused that distress. Restatement (Second) of Torts, § 46. Comment (d) thereof at 73 is instructive on the nature of the conduct contemplated:
 Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. . . .
Nothing is contained in the evidence to suggest that the police sergeant whose conduct precipitated the emotional responses did anything but commit a mistake. That is, there is no evidence that he intentionally or recklessly caused the distress which ensued. He has not been shown to have abused his position, or that he had any prior knowledge of the plaintiffs' susceptibility to distress, or that he either had a desire to inflict it or knew that severe distress would probably result.Ibid. at 74, 75. The absence of any evidence establishing those elements justified the trial court's action granting the defendant's motion for a directed verdict on the outrageous conduct claim, Rule 50, ARCP; Chandler v. Hunter, Ala.Civ.App.,340 So.2d 818 (1976), even though the ground given by the trial court, that no cause of action for outrageous conduct existed, was erroneous. King v. Winslett, 287 Ala. 98, 248 So.2d 566
(1971). As was stated in King, supra at 287 Ala. 103,248 So.2d 566:
 Appellants can take nothing in consequence of an erroneous conclusion inducing the trial court to give the general affirmative instruction for appellee, if appellee was otherwise entitled to such instruction. . . .
In summary, we have concluded that the plaintiffs did substantially comply with the notice requirements for their claim against the defendant municipality, but that the trial court was correct in granting the City's motion for a directed verdict because there was a failure of proof of the cause of action made an issue on this appeal. For these reasons the judgment appealed from must be, and is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.
[1] The plaintiffs' complaint contained a count charging negligence as well as counts charging fraud and intentional infliction of emotional distress. One of the grounds upon which the trial court granted the directed verdict was the failure of the evidence to support the negligence alleged. As we have noted, in their brief the plaintiffs do not complain of that action, but have limited the issues for our review to the two we have quoted from their brief. *Page 541