I disagree with the majority opinion only to the extent that its reversal is based on insufficiency of evidence as to the tort of outrage count. I would treat that issue thusly:
Proper submission of this count to a jury requires sufficient evidence from which permissible inferences could be drawn to support a finding of the extreme conduct necessary to constitute a tort of outrage. In order to resolve this issue, we must consider the definition of this tort adopted inAmerican Road Service Co. v. Inmon, 394 So.2d 361 (Ala. 1980), and as applied in Peddycoart v. City of Birmingham,392 So.2d 536 (Ala. 1980), and Cates v. Taylor, 428 So.2d 637 (Ala. 1983). *Page 1262 
In Inmon, quoting from § 46 of the Restatement (Second) ofTorts (1948), this Court described the tort:
 "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."
In Peddycoart, a police sergeant mistakenly told the father of an arrested man, upon the father's arrival at the jail, that his son had tried to hang himself in jail and had been sent to the hospital. The father, mother, and wife of the arrested man went to the hospital, whereupon a doctor told them he was sorry, but that he had done everything he could to save the man's life and the man had died anyway. It was then that the family, after examining the body, discovered it was a stranger who had hanged himself instead of their family member. Plaintiffs brought an action against the municipality for extreme and outrageous conduct resulting in emotional distress. This Court held, in applying the standard adopted in Inmon, that there was no evidence the police sergeant intentionally or recklessly caused the distress — he had merely made a mistake. The absence of evidence showing he abused his position, that he had a desire or intent to inflict distress, or knew that severe distress would probably result, justified the trial court's granting of defendant's motion for a directed verdict on the outrageous conduct claim.
Plaintiff contends this case is not controlled by Peddycoart
for two reasons: 1) the initial conduct of Empiregas cannot be categorized as a mere mistake — the employee deliberately came onto her property and removed the regulator without any inquiry or notice; and 2) the entire basis of the claim in Peddycoart
began and ended with the single mistake of the police sergeant. There was no subsequent conduct compounding the original error.
While Plaintiff's argument with respect to 1) is persuasive, I would not decide that issue. Even if we assume that the initial conduct was analogous to the unintentional "mistake" inPeddycoart, the subsequent conduct in the instant case, in my opinion, furnishes sufficient evidence from which a jury could reasonably infer the necessary intent, or reckless disregard equivalent to such intent, to constitute the tort of outrage. Although the descriptive terminology of the tort seems to suggest an inquiry as to the gravity of the harm done when ascertaining whether the tort lies, the focus must be upon the gravity of the conduct, rather than upon the result of that conduct.
The policy of the law is to look at an original error in a manner favorable to the one who makes the error, because the nature of the tort demands it be difficult of proof. But, here, Empiregas engaged in conduct after discovery of the "mistake," compounding that error. Mrs. Geary suffered severe distress because of her reliance on the company's repeated assurances that the regulator would be quickly returned. Mrs. Geary informed Empiregas of her condition; yet, the company, though promising to remedy the situation, did nothing despite its knowledge of the extreme cold and knowledge that the family was experiencing extreme distress. This conduct, coupled with the awareness of the surrounding circumstances, compounded the original error, and thereby overcomes Peddycoart's fatal evidentiary deficiencies.
Broken promises and assurances, however politely made, can constitute outrageous conduct. The Restatement definition of the tort does not require confrontation in an abusive or humiliating manner. See Holmes v. Oxford Chemicals, Inc.,672 F.2d 854 (11th Cir. 1982). Here, Empiregas created the condition causing the extreme suffering and anguish experienced by Mrs. Geary. The consequences of this condition were not merely foreseeable, but were actually revealed to Empiregas. The intentional actions of Empiregas in light of these circumstances furnish evidence sufficient to permit a jury reasonably to infer the elements necessary to constitute the tort of outrage. I am unable to reconcile this Court's acceptance of Plaintiff's claim of outrage in Cates v. Taylor, supra, and its *Page 1263 
rejection of that tort under the facts of this case.
FAULKNER, J., concurs.